[No. 20544.   In Bank. — October 14, 1889.]

## THE PEOPLE, RESPONDENT, *v.* GERONIMO BUELNA, APPELLANT.

CRIMINAL LAW — LARCENY — APPROPRIATION OF PROPERTY FOUND — IN-
STRUCTION. — Section 485 of the Penal Code, declaring it larceny for one who finds lost property under circumstances which give him knowledge or means of inquiry as to the true owner to appropriate such property to his own use, etc., does not create a distinct kind of larceny, but declares a rule of evidence which, being fulfilled, constitutes the crime as defined in section 484 of the Penal Code; and it is proper to instruct the jury as to such rule of evidence under an information drawn under section 484 defining larceny in general, if the evidence tends to show an unlawful appropriation by the finder of lost property as described in section 485.

ID. — INSTRUCTIONS — APPLICABILITY TO EVIDENCE — FACTS CONSTITUTING
LARCENY. — It is the duty of the court to instruct the jury as to the law bearing upon each class of facts presented by the evidence which might

constitute larceny, leaving it to the jury to determine which was the true state of facts. But instructions which are inapplicable to any facts in evidence should be refused.

ID.—INSTRUCTION AS TO OWNERSHIP—PROVINCE OF JURY.—An instruction that if the jury have reasonable doubt as to whether the property stolen was sold to the person alleged to be owner, they should find the defendant not guilty, is properly refused, as taking away from the jury all consideration of other inculpatory facts in evidence, as affecting the question whether the property was stolen from such person while in his possession as an agister, or was found and appropriated as lost from his possession without effort to return it.

ID.—LARCENY FROM AGISTER—INFORMATION—AVERMENT OF OWNERSHIP.—It is larceny to steal cattle from an agister who takes them from the owner to pasture, and the property may be alleged in the information to be the property of the agister; and though he has a special contingent contract with the owner, by which he is to have an interest in the increased value of the cattle, it is not necessary to allege any joint ownership of the cattle.

ID.—INSTRUCTION—"HONEST ACCOUNT" OF POSSESSION—BURDEN OF PROOF.—An instruction that if defendant gave an "honest account" of how he came by the stolen property, it is incumbent on the people, unless such account was unreasonable or improbable on its face, to show that it was false, is properly refused, as an "honest account" is merely a true account. It is doubtful whether the burden of proof would be upon the people to disprove his account, even if it showed that he was in possession of the property innocently.

APPEAL from a judgment of the Superior Court of San Luis Obispo County.

The facts are stated in the opinion of the court.

*Graves, Turner & Graves,* for Appellant.

*Attorney-General Johnson,* for Respondent.

The COURT.—The defendant in this case was accused by information of grand larceny. He was convicted as charged. From the judgment rendered upon the verdict of the jury, and an order denying a new trial, he appeals. He contends that an instruction of the court in reference to the appropriation of lost property by the finder thereof is erroneous. The language complained of is as follows: "One who finds lost property under circumstances which give him knowledge or means of

inquiry as to the true owner, and who appropriates such property to his own use, or to the use of another person not entitled thereto, without making reasonable and just efforts to find the owner and restore the property to him, is guilty of larceny." It is not denied that the instruction is correct as an abstract proposition of law, but it is insisted that it was improper, under the charge contained in the information. The defendant argues that the acts defined in section 485 of the Penal Code constitute a different kind of larceny from that set out in the provisions of section 484 of the same code. The two sections read thus: " Sec. 484. Larceny is the felonious stealing, taking, carrying, leading, or driving away the personal property of another." "Sec. 485. One who finds lost property under circumstances which give him knowledge of or means of inquiry as to the true owner, and who appropriates such property to his own use, or to the use of another person not entitled thereto, without first making reasonable and just efforts to find the owner and restore the property to him, is guilty of larceny."

It will be seen at a glance that it was not the legislative intent to create, by the enactment of these provisions of law, any two distinct kinds of larceny, such as the defendant insists upon. The first section defines larceny generally; the second section declares a rule of evidence which, being fulfilled, constitutes the crime as defined in the first section. It is plain that the charge was correct under the information, and there was evidence in the case, proceeding from the defendant and his witnesses, which tended, in some degree at least, to show that the defendant did find and appropriate a stray steer, not then in the actual possession of Mosher, in whom the title was laid in the information, and that such appropriation was made without first making reasonable and just efforts to find the owner and restore the property to him. The instruction of the court was in-

tended to meet this view of the case as presented by the
defendant himself, in the attempted justification of his
act of appropriation.   On the other hand, the proof first
adduced by the prosecution went to show that Mosher
owned the steer,—had bought it of Meade and Goldtree
Brothers.    Then, upon further investigation, there was
evidence tending to show that Mosher only had a special
interest in it as an agister for the Vachel Brothers.   Thus
there was evidence upon which the jury were to pass,
involving several propositions: 1. Whether the property
was Mosher's absolutely, or that in which he had a spe-
cial interest; 2. Whether the property was stolen from
his possession either as the owner or agister; 3. Whether
it was taken from Mosher's actual possession, or was,
as claimed by the defendant, found by him as lost prop-
erty, and taken up in good faith, to be accounted for to
the true owner, or taken up and appropriated as lost
property in bad faith, and with an intention to deprive
the owner of it.   Under this state of the evidence it was
the duty of the court to instruct the jury as to the law
bearing upon each class of facts as presented in the evi-
dence, leaving it to the jury to determine which was the
true state of facts.   If Mosher owned the property, and
it was stolen from his possession, the defendant would
be guilty if he took or drove it away; but if Mosher did
not own it by purchase from Goldtree Brothers and
Meade, yet if he had a special interest in it, as agister
or otherwise, it would not prevent the jury from find-
ing the defendant guilty of larceny, if the other facts
warranted; so that the instruction to the jury asked by
the defendant, and refused by the court, that "it is con-
tended by the people that the steer mentioned in the
information was purchased by I. E. Mosher from Gold-
tree Brothers and Meade, and if you find from the evi-
dence that there is a reasonable doubt that the said
Goldtree Brothers and Meade sold said steer to I. E.
Mosher, you will give the defendant the benefit of the

doubt, and find the defendant not guilty," was wrong, and properly refused. It took away from the jury all consideration of the other inculpatory facts in evidence, as affecting the question whether the defendant stole the property from Mosher as an agister, or found and appropriated it as lost from Mosher's possession as said agister, and without effort to return it to him. This instruction was given also: "If A takes cattle from B to pasture, and any cattle are stolen from the possession of A, it is larceny, and the property may be alleged to be the property of A." In view of the facts in evidence upon the question of Mosher's agistment of the stolen property, and the other instructions in the case, it is plain that this instruction was to the effect, and could only be understood as saying to the jury, that if Mosher took cattle from the Vachel Brothers, or any other person, to pasture, and any of such cattle were stolen from Mosher, it would be larceny, and the property may be alleged in the information to be the property of Mosher; and therefore the instruction was not misleading or wrong as a proposition of law. Taking the instruction by itself, and without considering all the evidence and the other instructions, it might be subject to the nice criticism put upon it by the ingenious counsel for the defense; but to a fair-minded person, in view of all the facts, circumstances, and other instructions, we cannot see that the defendant could have suffered any prejudicial error through the instruction as given. There was some evidence in the case that Mosher had a special interest in the property, and had it in possession as agister upon a special contingent contract with the owner. This being so, it was for the jury to say whether this special interest and possession existed; and that being so, there was no necessity for an allegation in the information of any joint ownership by Vachel Brothers and Mosher, naming each one.

The further claim is made by the appellant that cer-

tain other instructions requested to be given were erroneously refused by the court. They are as follows: "(d) If you find, from the evidence, that the steer described in the information belonged, at the time of the alleged taking, to a partnership composed of A. H. Vachel, Arthur Vachel, and I. E. Mosher, you must find the defendant not guilty. (e) If you believe, from the evidence, that the steer described in the information belonged, at the time of the alleged taking, to H. A. Vachel and Arthur Vachel, and I. E. Mosher has a half interest in the increase of the value of said steer, you must find the defendant not guilty." The evidence did not disclose any partnership between Mosher and the Vachel Brothers. He held the property as an agister in trust for them, and was to have a contingent interest in the increased value of the steer, if any accrued. There is no evidence that any such value did accrue. For this reason, not to speak of others which might be mentioned, the instructions were properly refused.

The court refused instruction marked "b," reading thus: "It is also contended by the people that the steer described in the information was sold to Byer Brothers to Goldtree Brothers and Meade; and if you have any reasonable doubt as to whether Byer Brothers did sell said steer to Goldtree Brothers and Meade, you must give the defendant the benefit of that doubt, and find the defendant not guilty." If this instruction, as it appears in the bill of exceptions, is exactly as asked, it is plain that it is unintelligible. If it is meant to use the word "by" instead of "to" just before the words "Byer Brothers" where they first occur, then if granted the jury would have been confined to only one theory of the case, and would have been compelled to disregard all other facts in evidence bearing upon the defendant's possible guilt, and the instruction was properly refused.

The refusal of instruction marked "c" in the bill of exceptions, as asked for by the defendant, is claimed to

be prejudicial to his rights. The instruction is: " If you find, from the evidence, beyond a reasonable doubt, that on or about the time mentioned in the information, the defendant was in possession of the steer described therein, and that the defendant gave an honest account of how he came by it, or under what authority he took said steer, it is incumbent on the people, unless the account given of the possession by the defendant was unreasonable or improbable on its face, to show that the account of said possession is false." The counsel for defendant probably intended to ask for an instruction to the effect that if his story showed that he was in possession of the property innocently, and his story was reasonable, etc., then the jury could not convict, unless the prosecution showed that story to be false; that is, we suppose, directly disproved it. Even that doctrine would be doubtful. But that was not what defendant asked. When an appellant seeks to reverse a judgment for a refusal to give a certain instruction, he must successfully maintain that the instruction asked clearly stated a correct principle. Here the proposed instruction was, that if defendant " gave an honest account of how he came by'" the property, it was incumbent upon the people to show that the account was false. Now, the only notion we can have of an honest account is a true account. If, therefore, according to this proposed instruction, a defendant in a larceny case should give an " honest account" of how he got the stolen property, and that account should be that he stole it, it would be incumbent on the people to show that the " account" was false, — that is, that he did not steal it; a proposition which, it may be safely said, is not law.

We see no error in the record. Judgment and order affirmed.

PATERSON, J., dissenting.—I dissent, because in my opinion the evidence is insufficient to support the verdict and judgment.