[Crim. No. 2154.  In Bank.—September 5, 1918.]

# THE PEOPLE, Respondent, v. EDWARD S. KEYES, Appellant.

CRIMINAL LAW—MURDER—INSANITY—CONFLICT OF EVIDENCE—APPEAL.— In a prosecution for the crime of murder, where the evidence is in substantial conflict on the sole defense of insanity at the time of the commission of the crime, the verdict cannot be disturbed on appeal.

ID.—INSANITY AS RESULT OF ALCOHOLISM—INSTRUCTION.—On a trial for murder committed after an attempt to commit sodomy, where the principal defense was settled insanity produced by habitual intoxication, an instruction that insanity produced by intoxication does not destroy responsibility when the party, when sane and responsible, made himself voluntarily intoxicated, and that evidence of drunkenness can only be considered for the purpose of determining the degree of the crime, does not purport to deal with settled insanity, produced by intoxication, but with temporary intoxication as a defense, and has relevancy only to the intoxication of the defendant existing at the time of the murder.

ID.—DEFENSE OF INSANITY—BURDEN OF PROOF—QUANTUM OF EVIDENCE —INSTRUCTION.—In such an action, an instruction that where insanity is relied upon as a defense, the burden of proving the existence of such insanity is on the defendant, and it is incumbent on him to establish by a preponderance of evidence that he was insane at the time of the committing of the act charged, and the evidence of mental derangement must be such, in amount, that if the single issue of sanity or insanity of the defendant should be submitted to the jury in a civil case, they must find that he is insane, is not objectionable as imposing too great a burden upon defendant as to how far his proof of insanity must preponderate.

ID.—CONTINUANCE OF INSANITY — PRESUMPTION — INSTRUCTION.—A requested instruction that if the jury finds that the defendant was insane at a period before the homicide in question, his insanity is presumed to have continued up to the time of the homicide, providing the exciting cause of such insanity also exists up to such time, is too broad, in that it does not properly limit the insanity to permanent or habitual insanity, as distinguished from temporary insanity, there being as to the latter no presumption of continuance from proof of its prior existence.

ID.—PRESUMPTION AS TO KILLING DURING LUCID INTERVAL—INSTRUCTION.—A requested instruction that if the jury finds that the defendant was insane at a period before the homicide, there arises a presumption that such insanity continued and the burden of proof rests upon one who claims that an act of such person was during

a lucid interval to show that the lucid interval existed at the time of the act in question, is too broad, and is also objectionable as containing an incorrect statement of the law of presumption as to lucid interval.

ID.—IMBECILITY AS A DEFENSE—INSTRUCTION.—A requested instruction that although sanity is presumed to be the normal and natural state of the human mind, when imbecility is once shown to exist in a person it is presumed to exist and continue until the presumption has been overcome by contrary or repelling evidence proving sanity, is not a correct statement of the law.

ID.—SANITY OF DEFENDANT—TRIAL BY JURY—DISCRETION.—The right of a defendant to have the sole question of his sanity passed upon by a jury in proceedings inaugurated under section 1368 of the Penal Code is addressed to the sound discretion of the trial judge, and the showing must be sufficient to create a doubt in the mind of the judge as to the defendant's sanity before the court is required to submit the question to the jury.

APPEAL from a judgment of the Superior Court of Orange County, and from an order denying a new trial. Z. B. West, Judge.

The facts are stated in the opinion of the court.

Ingle Carpenter, for Appellant.

U. S. Webb, Attorney-General, Joseph L. Lewinsohn, Deputy Attorney-General, and Jerry H. Powell, for Respondent.

LORIGAN, J.—The defendant was convicted of the crime of murder of the first degree, sentenced to death, and appeals. The victim of the defendant was a newsboy, eleven years of age, whom the defendant had enticed to his home at night and killed after an attempt to commit sodomy on him, the killing being accompanied by the dismemberment of the body of the boy and an attempt at its concealment. In its details the crime was of a particularly fiendish and revolting character, and in view of the fact that there is no claim on this appeal but that the evidence adduced fully warranted the conviction of the defendant and the penalty imposed upon him, it will be unnecessary to further refer to that evidence.

The sole defense interposed on behalf of the defendant was that he was insane when the killing was perpetrated, and to sustain this claim there was given in evidence the clinical

history of the defendant from his infancy, and consisted in the main of misfortune attending his birth and childhood, physical injuries suffered in early youth, and a life made up of waywardness, wanderings, delinquencies, bestialities, drunkenness, temporary reforms and early relapses, a term in the state prison and detention in an insane asylum. On the other hand, there was evidence on the part of the prosecution, given by witnesses who had known, observed, and talked with the defendant weeks or days before the killing, that he was sane when the crime was committed. On both sides there were opinions of medical experts, some that the defendant was insane when the crime was committed, while others declared him to have been sane. As we do not understand that any serious claim is made but that there was a substantial conflict in the evidence and the opinions of the experts as to the legal responsibility of the defendant for the crime charged against him, it is not necessary to refer in detail to that evidence, because where such a condition exists the verdict of the jury resolved from the conflict cannot be disturbed by this court. There being then no claim against the sufficiency of the evidence to sustain the charge of murder of the first degree, and the defense of insanity being found against the defendant upon substantially conflicting evidence, the verdict upon the judgment must stand, unless there is some merit in various points made by appellant as to certain instructions given or refused by the trial court, rulings with reference to testimony, and the refusal of the trial court, before and after the main trial of defendant, to submit the question of his then sanity or insanity for determination by a jury.

Approaching a consideration of these points. It is claimed by the appellant that the principal defense of insanity interposed by him was insanity produced by the use of intoxicating liquors covering a long period of time, and which had resulted in what is often referred to in the books as settled insanity produced by habitual intoxication. While this is the claim of appellant on this appeal, it was not the exact theory upon which the defense of insanity was presented upon the trial. The claim then was of a more extended character of insanity, namely, that the defendant was a moral degenerate; that he had been an imbecile from infancy and had since gradually undergone a further mental deterioration;

that the habitual use of alcohol would cause such an imbecile with a deteriorating mind to become more irritable and more disturbed, and accentuate any evil passion with which he might be possessed and render him less capable of self-control; that any abnormal sexual impulse in such an individual would be further inflamed by the use of alcohol, and the possible resistance of the victim would further excite and inflame him into a state of rage where he would become utterly irresponsible and would develop an impulse to violence or to murder. It was further in evidence that defendant, while at the house, had a quart bottle of whisky, which he and his victim drank. The foregoing presents in a general way the character of insanity with which it was asserted the defendant was afflicted on the night of the murder and embodies the claim of defendant as to settled insanity.

The defendant insists that the instructions given by the court were not sufficiently clear and broad to advise the jury upon the law as to the defense of settled insanity produced by intoxication and calls attention to the following instruction, which he claims is deficient in that respect:

"Drunkenness is no excuse for the commission of crime. Insanity produced by intoxication does not destroy responsibility when the party, when sane and responsible, made himself voluntarily intoxicated; and drunkenness forms no defense whatever to the fact of guilt, for when a crime is committed by a party while in a fit of intoxication, the law will not allow him to avail himself of his own gross vice and misconduct to shelter himself from the legal consequences of such crime. Evidence of drunkenness can only be considered by the jury for the purpose of determining the degree of crime, and the weight to be given it is a matter for the jury to determine in connection with all the other evidence and circumstances in proof in the case."

This instruction, however, does not purport to deal with settled insanity produced by intoxication, but with temporary intoxication as a defense, and has relevancy only to the intoxication of the defendant existing at the time of the killing from the liquor which he and the deceased drank at the house. As such an instruction, it, and the lengthier portion of the instruction which the appellant omitted to quote, is clearly good law as established by a long line of cases in this court culminating in *People* v. *Hower,* 151 Cal. 638, [91 Pac.

507]. Appellant says that in any event the giving of this instruction was misleading, as the court gave no other instruction on the subject of settled insanity from intoxication. The appellant, however, requested a large number of instructions, and if the court had failed to instruct on that specific char· acter of insanity, he should have framed an instruction and requested the court to give it. The truth, however, is that the court gave the jury full instructions on the subject of the defense of insanity from whatever cause proved. It was not required to designate any particular phase of insanity. It is proper to note, however, that at the defendant's request the court did instruct the jury on the subject of insanity through the use of alcoholic liquors as follows:

"The court instructs the jury that temporary insanity as a defense to a crime is as fully recognized by law as is permanent insanity, and if the jury finds that the defendant, though of weak intellect, was not insane prior to and after the commission of the alleged offense, but at the time of the commission of the crime, through the use of alcoholic drinks or because of some other excitement at the time, he was temporarily in such a mental condition that he was not aware of the nature of the offense and had not the ability to discriminate between right and wrong, you must acquit the defendant on the ground of insanity."

It is next contended by the appellant that the court erred in an instruction to the jury as to the *quantum* of evidence necessary to preponderate in order to sustain the burden of proof in a defense of insanity. On that subject the court instructed the jury as follows:

"Although it is true, as you have been instructed, that generally the burden of proof is upon the prosecution, yet, to this rule there is this exception: Where insanity is relied upon as a defense, the burden of proving the existence of such insanity is on defendant, and it is incumbent upon him to establish by a preponderance of evidence that he was insane at the time of committing the act charged, and the evidence of mental derangement must be such, in amount, that if the single issue of sanity or insanity of the defendant should be submitted to the jury in a civil case, they must find that he is insane. Insanity must be established by a preponderance of the evidence. Therefore, if you believe that the preponderance of evidence is in favor of the sanity of the de-

fendant, or that there is not a preponderance of evidence to the effect that he was insane at the time of the transaction involved herein, you will act upon the hypothesis that he was sane at that time.''

Counsel contends that by the use of the word ''must'' in the instruction too great a burden was imposed upon defendant as to how far his proof of insanity must preponderate. No fault is found with the instruction save in the use of the word ''must,'' and as to that we think the criticism of appellant not justified. All that the instruction tells the jury is that the defense of insanity must be established by a preponderance of evidence, and that preponderance must be such that if the single issue was presented in a civil action as to whether the defendant was insane or not, the jury would find that he was insane. It is suggested that there is an impulsion implied from the use of the word ''must.'' This may be admitted, but it adds nothing to the force of the defendant's criticism of the instruction. Of course, it will not be questioned but that in a civil case if a jury is satisfied that a defense of insanity is established by a preponderance of evidence, it is its absolute duty to find to that effect; it is the duty imposed upon them by law—they must so find. So, too, on a similar issue in a criminal case, if the evidence satisfies the jury by a preponderance in his favor that he is insane, it is its duty to so find; they must do it to fulfill their obligations as jurors. This is all the instruction tells them to do. A similar instruction to this was approved in *People* v. *McDonell,* 47 Cal. 134, and *People* v. *Hamilton,* 62 Cal. 377. Counsel for appellant relies in support of his criticism of the instruction on the cases of *People* v. *Wreden,* 59 Cal. 392, and *People* v. *Wells,* 145 Cal. 138, [78 Pac. 470]. But they are not in point. In these cited cases, the court, after telling the jury that insanity must be established by a preponderance of evidence, further proceeded to make explanatory statements as to how that preponderance must be shown, telling the jury that it ''must be clearly established by satisfactory proof.'' It was held that such instructions were erroneous, as they amounted to telling the jury that a defense of insanity must be established beyond a reasonable doubt. The instruction here criticised confines itself to telling the jury that a ''preponderance of evidence'' is sufficient to sustain the defense. Another instruction was given by the court on this same sub-

ject, which, together with the instruction criticised, makes the latter more plain, if, indeed, anything of the kind was necessary. That instruction is as follows:

"Up to the moment when the killing is proved the prosecution must make out its case beyond any reasonable doubt. When the killing is proved it devolves upon the defendant to show any circumstances in mitigation to excuse or justify by a preponderance of evidence on his part. That is, the killing being proved, the defendant must make out his case in mitigation to excuse or justify by some proof stronger in some appreciable degree than the proof of the prosecution. The burden of proof changes. It must be in some degree, no matter how small, stronger than the proof of the prosecution on the other side."

The next point urged by defendant is that error was committed by the court in refusing several instructions. We quote them as follows:

"The court instructs the jury that if the jury finds from the evidence that the defendant was insane at a period before the homicide in question, then in that case his insanity is presumed to have continued up to the time of the homicide providing the exciting cause of such insanity also exists up to the time of the homicide.

"The court instructs the jury that if the jury finds from the evidence that the defendant was insane at a period before the homicide in question, there arises a presumption that such insanity continued, and the burden of proof rests upon one who claims that an act of such person was during a lucid interval to show that the lucid interval existed at the time of the act in question. .

"The court instructs the jury that although sanity is presumed to be the normal and natural state of the human mind, when imbecility is once shown to exist in a person, it is presumed to exist and continue until the presumption has been overcome by contrary or repelling evidence proving sanity. And that such proof of sanity must be without qualification."

These three instructions in varying form were calculated to instruct the jury that insanity once shown to exist, it is presumed to continue, that is, if the jury found the defendant was insane at some time prior to the killing of the deceased, the presumption is that he was insane at the time the killing was done.

In the case of *People* v. *Schmitt,* 106 Cal. 48, [39 Pac. 204], the first instruction asked, which is precisely the same as was under consideration in that case, was condemned on the ground that it was too broad; it did not properly limit the insanity to permanent or habitual insanity as distinguished from temporary insanity, concerning the latter, of which no presumption of its continuance can be indulged in from proof of its prior existence. Aside from this, it failed to contain the proper qualifications that it would only be presumed to exist until the contrary was shown. (*People* v. *Francis,* 38 Cal. 183; Wharton's Criminal Law, sec. 55.)

As to the second instruction quoted, the same objection applies as to the one we have just had under consideration, with the added vice that it introduces as an element in the case to which the instruction is to be applied a "lucid interval," evidence of which was nowhere in the case or claimed to be. Even as to "lucid interval" it did not correctly state the law of presumption, because it is laid down in 12 Cyc. 389 as the recognized rule that "when it is shown that a defendant had lucid intervals it will be presumed that the offense was committed in one of them." In passing it may be remarked, too, that the instruction assumes that the prosecution contended that the crime of defendant was committed during a lucid interval and inferentially that the defendant had been, prior to the occurrence of said lucid interval, insane. The prosecution contended for nothing of the kind, and did not admit that the defendant was insane at any time.

The third of the quoted instructions was properly refused, because it had no relevancy to the case, and further, because it was not a correct statement of law. Imbecility is no defense against crime unless its existence deprives the individual of the power to distinguish between right and wrong. No reference is made in the instruction as to the existence of a mental deficiency in this respect with reference to the imbecility mentioned therein. In *People* v. *Oxnam,* 170 Cal. 211, [149 Pac. 165], the distinction between imbecility or feeble-mindedness and insanity as a defense to crime is clearly pointed out, and this distinction, not appearing in said instruction, it was for that reason properly refused.

Complaint is made by appellant because the court refused prior to the main trial and after such trial to have the sole question of the sanity of the defendant passed upon by a

jury. The demand was made by his counsel under section 1368 of the Penal Code, based upon an affidavit of such counsel. The second application was supported by affidavits of two physicians and also officers of the jail. Counteraffidavits were filed on behalf of the state. The right to a jury trial in proceedings inaugurated under said section 1368 is addressed to the sound discretion of the judge before whom the cause is pending, and the showing must be sufficient to create a doubt in the mind of the judge as to the sanity of the defendant before he is required to submit the question to a jury, and we will not disturb his action unless it appears that there was a clear abuse of such discretion. (*People* v. *Hettick*, 126 Cal. 425, [58 Pac. 918] ; *People* v. *West,* 25 Cal. App. 369, [143 Pac. 793] ; *People* v. *Fountain,* 170 Cal. 460, [150 Pac. 341].) There is not the slightest showing of any abuse of discretion on the part of the judge, and the two applications must be deemed properly denied.

These are the only points presented by appellant on this appeal which we deem require an extended discussion, and finding them all without merit, the order denying the motion of defendant for a new trial, and the judgment awarding the death penalty, are hereby affirmed.

Richards, J., *pro tem.,* Wilbur, J., Melvin, J., Shaw, J., Sloss, J., and Angellotti, C. J., concurred.