[Crim. No. 1186. First Appellate District, Division One.—December 15, 1924.]

## THE PEOPLE, Respondent, v. BERT TAYLOR, Appellant.

[1] CRIMINAL LAW — ROBBERY — CORROBORATION OF ACCOMPLICE — CONTRADICTORY AND FALSE STATEMENTS BY DEFENDANT.—In this prosecution for the crime of robbery, in which the testimony of an accomplice clearly established the commission of the crime and the participation therein by defendant, it having been shown by the prosecution that a few days after the crime was committed defendant disappeared from his place of employment without giving notice of his intention to leave, that when he was arrested a year later he made contradictory statements as to the *aliases* by which he had been known, that he falsely denied that he had ever worked for a certain person, or that he had seen him at a specified time after the robbery, or that he had been in a certain town at any time, such contradictory statements of themselves amounted to material corroboration of the testimony of the accomplice.

[2] ID.—FAILURE TO DISPUTE INCRIMINATORY REMARKS—ADMISSIONS—PROVINCE OF JURY.—In such prosecution, in determining defendant's guilt or innocence of the charge, it was clearly within the province of the jury to say whether, under the circumstances under which the statements were made, the failure of defendant to dispute the incriminatory statements made in his presence following his arrest amounted to a tacit admission of the truth of such statements.

[3] ID.—SUFFICIENCY OF CORROBORATION—WEIGHT OF EVIDENCE.—Corroboration, in order to satisfy the requirements of the statute relating to corroboration of the testimony of accomplices, must have more than enough weight to raise a mere suspicion; but it is sufficient if the corroboration, of itself, tends to connect

---

1. See 1 R. C. L. 171; 8 Cal. Jur. 181.
3. See 8 Cal. Jur. 178.

defendant with the commission of the offense, although it is slight and entitled, when standing alone, to but little consideration. It is not necessary that the independent evidence be corroborative of the precise acts or facts related by the accomplice.

---

(1) 16 C. J., p. 706, n. 53, p. 707, n. 54, 56 New. (2) 16 C. J., p. 631, n. 67, 70, p. 707, n. 56. (3) 16 C. J., p. 701, n. 22, p. 704, n. 35, p. 705, n. 40, p. 711, n. 19, 23, 24, p. 712, n. 26, 30.

APPEAL from a judgment of the Superior Court of Alameda County. Lincoln S. Church, Judge. Affirmed.

The facts are stated in the opinion of the court.

Harold D. Perry for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

KNIGHT, J.—The defendant appeals from a judgment of conviction of the crime of robbery and from an order denying his motion for a new trial. He was jointly indicted with Jeff Rodgers (also known as Jeff Galbraith), Al Moore, Rex Robinson, and Harry Walker (also known as Jimmy Walker), but was separately tried for the reason he was not apprehended until some months after Rodgers, Moore, and Robinson had been tried and convicted.

On the night of January 13, 1923, a café named "The Pergola," near Hayward, Alameda County, was "held up" by several masked bandits and about 250 of its patrons were robbed. According to the evidence offered by the People, the conspiracy to rob the place originated in Modesto. One George Ducker was hired by Moore to convey him and Rodgers and appellant in Ducker's automobile to Oakland, where Robinson and Walker were picked up, and then all were driven to the scene of the robbery. Ducker waited near by in his machine while the robbery was in progress and afterward drove the entire party back to Modesto, where the fruits of the robbery were divided and the party disbanded.

The appellant offered no testimony in his own behalf, having rested his case upon the evidence introduced by the prosecution.

It is now contended that the evidence is insufficient to warrant a conviction, and that the testimony given by Ducker,

who was admittedly an accomplice, was not corroborated by such other evidence as would tend to connect appellant with the commission of the crime.   (Sec. 1111, Pen. Code.)

That the robbery was committed at the time and place, and in the manner alleged in the indictment, there can be no doubt.   Furthermore, appellant's active participation in the crime was clearly proved by the testimony given by Ducker if, as a matter of law, such testimony has been sufficiently corroborated to meet the requirements of the statute. Ducker's testimony, briefly stated, was that on the morning of January 13, 1923, he was hired by Moore to drive Moore and some friends to Oakland, for which Moore agreed to pay Ducker $100.   Between 4 and 5 o'clock that afternoon Ducker picked up Moore and Rodgers, the latter being known to Ducker as Jeff Galbraith, by appointment, in his automobile, in front of a pool-room in Modesto, and drove, as directed by Moore, a short distance south of Modesto across the Tuolumne River, to a fruit-stand conducted by one George Sylvia, who was commonly known as "Chicken George," where Moore got out of the automobile, went into "Chicken George's" place and soon came out accompanied by the appellant, who was known and referred · to as "Blackie."   The four men then proceeded to Oakland, arriving there about an hour or two after dark.   Under Moore's direction Ducker drove to a house on Thirty-third Street, where appellant and Galbraith alighted, went into the house, remained there about twenty minutes, came out, and all four men drove to a restaurant on Twelfth Street, where they ate supper.   All were then driven back to the house on Thirty-third Street.   Galbraith and appellant again entered the house, remained there about twenty minutes, and came out accompanied by Robinson and Walker.   The entire party then entered the machine and were driven, under Moore's direction, toward and beyond said café and up a lane, where the car was stopped and all of the occupants, except Ducker, got out, put on overalls, and disguised themselves with masks.   Again entering the machine they were driven back down the highway to a point near the café, where the machine was again stopped, the lights extinguished, and all except Ducker, who remained in the automobile, proceeded toward the café to commit the robbery. Following the robbery, which consumed about an hour and a half, all five men returned to the machine and were im-

mediately driven by Ducker back to Modesto via Stockton. They went directly to Moore's room, where the money and jewelry of which the guests were robbed was divided. Out of the spoils Ducker was paid $100 and given a watch. The balance was divided between the five men who had actually committed the crime. Ducker then drove appellant back across the river to "Chicken George's" place, left him there and returned to Modesto, arriving home about daylight, which was on Sunday morning.

Evidence, independent of Ducker's testimony, was introduced proving that for a few weeks preceding the date of the robbery appellant had been conducting a lunch counter in "George's" place and was known as "Holy Roller"; that some time after 7 o'clock on this same Sunday morning, January 14, 1923, appellant went uptown and was arrested for drunkenness and did not return to "George's" place for two or three days. He immediately again departed without telling "George" he was going away. "George" did not see him thereafter until July or August, 1923, when appellant drove up in front of "George's" place, in an open "Ford" machine with a "rebuilt body" and a "high hood," and stated that he "took a trip down south somewhere and went on up the coast," and was on his way back; that "he was drunk and hit a telephone post or something and busted up the front end pretty bad, and had it fixed, and he wanted a couple of dollars to buy gas to get back home." "George" gave him the two dollars and appellant departed.

The evidence further reveals that in January, 1924, appellant was arrested for this crime in Redondo Beach by two deputy sheriffs from Alameda County. Standing in front of the house in which appellant was arrested was a Ford car with a "bug" body, built "like a little canoe with Ford wheels on it was a place in the center where you can sit," of which appellant admitted ownership. Appellant was taken to the police station in Redondo Beach, where, in answer to inquiries made by one of the deputies, he denied that he was ever known as "Holy Roller" or "Blackie." He also denied that he was ever in Modesto or that he had ever worked for "Chicken George" or that he drove through Modesto the latter part of July or August in a Ford and borrowed two dollars from "Chicken George." Appellant was then taken from Redondo Beach to Los Angeles, but before leaving there said to his wife, "I won't say anything until I see you.

Come on to Oakland." On the way to Los Angeles, after appellant had been told that he was under arrest for "the Pergola hold-up," he inquired as to the date of the crime and the officer said: "I won't tell you the date now. But I will tell you that you left Modesto on January 13th between 4 and 5 in the afternoon, with Al Moore, Jeff Galbraith, and George Ducker and went to Oakland to a house on East Thirty-third Street, where you and Jeff Galbraith got out and went inside and come out again, and then you and Al Moore, Jeff Galbraith, and George Ducker went to a restaurant on the south side of Twelfth Street and had dinner; and you came back to the house on East Thirty-third Street, where again you and Jeff Galbraith went in, and about twenty minutes afterward you come out with Rex Robinson and Jimmie Walker, and from there you went to the Pergola near Hayward, held it up; after the robbery you drove back to Modesto, went up to Al Moore's room, divided the loot and went from Al Moore's room with George Ducker across the bridge, where he left you at "Chicken George's." To this statement appellant made no reply. On the way north by automobile, from Los Angeles, the party stopped at "Chicken George's" place and after bringing appellant into the presence of "George" the following conversation took place, according to the officer: "I [the officer] said, 'George, is this the man that used to work for you?' and he said, 'Yes.' I said, 'Is this the man you know as Holy Roller?' And he said, 'Yes.' I said, 'Is this the man that you know as Blackie?' And he said, 'Yes.' I said, 'Is this the man that worked for you last January?' and he says, 'I am not sure what time, but he worked for me last year.' I said, 'Is this the man that came through Modesto around the latter part of July or August, in a bug Ford machine and borrowed two dollars off of you?' And he said, 'Yes.' And the defendant never answered one way or the other." The appellant made no sign of recognition, so far as "George" was concerned until after the latter had identified him. He then asked: "What date did I work for you," and later he admitted that he was known as "Holy Roller." Afterward, in the Modesto police station, in the presence of the officers, Ducker, and appellant, another conversation took place, according to the officer, as follows: "I [the officer] said to Ducker, 'Ducker, is this the man that you know as Blackie that you took on January 13th between 4 and 5 with Al

Moore and Jeff Galbraith from Modesto to the Pergola where they held it up?' and he said 'Yes.' 'Is this the man that you know as Blackie that you drove from the Pergola on January 14th to Al Moore's room, where the loot was divided, where each one of them got about $135 apiece, and where you received $100, and that afterward that you took him across the bridge to Chicken George and left him there,' and he said, 'Yes.' " The appellant made no response. [1] It thus appears that independently of the testimony given by the accomplice, it was shown by the prosecution that within a few days after the crime was committed appellant disappeared from his place of employment without notifying the man with whom he had been working of his intention to leave; also that when he was arrested a year later he made contradictory statements as to being known as "Blackie" or "Holy Roller," falsely denied that he had ever worked for "Chicken George," or that he had seen him ["George"] in July or August of that year, or that he had ever been in Modesto at any time. Such contradictory statements of themselves amounted to material corroboration. (*People* v. *McLean,* 84 Cal. 480 [24 Pac. 32].) [2] Furthermore, in determining appellant's guilt or innocence of the charge it was clearly within the province of the jury to say whether, under the circumstances, the failure of appellant to dispute the incriminating statements made in his presence, as above related, amounted to a tacit admission of the truth of such statements. (*People* v. *Shelest,* 62 Cal. App. 213 [216 Pac. 389]; *People* v. *Bishop,* 54 Cal. App. 129 [201 Pac. 328]; *People* v. *Ong Mon Foo,* 182 Cal. 697 [189 Pac. 690].) [3] Corroboration, in order to satisfy the requirements of the statute, must, of course, have more than enough weight to raise a mere suspicion. But it need not be strong. It is sufficient if it, of itself, tends to connect the defendant with the commission of the offense, although it is slight and entitled, when standing alone, to but little consideration. (*People* v. *McLean, supra; People* v. *Klopfer,* 61 Cal. App. 291 [214 Pac. 878]; *People* v. *Flood,* 41 Cal. App. 373 [182 Pac. 766].) Nor is it necessary that the independent evidence be corroborative of the precise acts or facts related by the accomplice. (*People* v. *Cloonan,* 50 Cal. 449.) The jury was correctly charged upon the law as declared in said

section 1111 of the Penal Code, and we are satisfied that its verdict was, under the law, fully justified.

Judgment affirmed.

Tyler, P. J., and St. Sure, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 12, 1925.