[Crim. No. 1215.  Second Appellate District, Division Two.—May 9, 1925.]

THE PEOPLE, Respondent, v. ROBERT B. CHESNEY, Appellant.

[1] Criminal Law—Forgery—Evidence—Verdict—Appeal—Conflicting Statements of Defendants.—In this prosecution for forging a certain check, with intent to defraud the alleged maker and a certain bank, the evidence, if believed by the jury, justified a conviction; and the many conflicting statements made by defendant in his various "assertions of innocence" rendered it only the more imperative that the appellate court should not disturb the finding of the jury.

[2] Id.—Handwriting Experts—Disagreement—Weight and Credibility of Testimony.—In such prosecution, the fact that various handwriting experts testify on each side of the case, and that they do not agree, does not render the handwriting experts for the prosecution unworthy of belief and is not a ground for reversal of the judgment of conviction.

[3] Id. — Province of Jury — Conflicting Evidence — Reasonable Doubt of Guilt.—Questions of fact, including the credibility of witnesses, the weight to be given to their testimony, and the guilt or innocence of a person on trial before a jury, are exclusively for the jury to decide, and when so determined a reversal is not authorized because of inconsistencies or disparities in the testimony, or because the testimony is susceptible of two reasonable inferences, one looking to the guilt of the defendant, and the other to his innocence; and the mere fact that there is a conflict in the evidence does not give rise to a reasonable doubt of the defendant's guilt.

[4] Id.—Several Theories of Defense—Instructions.—In this prosecution for forging a certain check, in which two possible theories were advanced for the defense, first, that the check was issued by

the person who appeared as the maker thereof and, second, that the check was issued by the person named as payee therein, the court having instructed the jury, by two separate instructions, that they should acquit the defendant if they found certain facts connected with such defenses to be true, it was not prejudicial error to refuse a further instruction requested by defendant with reference thereto, even though such instruction contained a correct statement of the law.

(1) 26 **C. J.**, p. 971, n. 69.   (2) 17 **C. J.**, p. 264, n. 89.   (3) 17 **C. J.**, p. 255, n. 52, p. 267, n. 99.   (4) 16 **C. J.**, p. 1063, n. 85.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Carlos S. Hardy, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. K. Sargent, Wm. M. Morse, Jr., and Harold Ide Cruzan for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

CRAIG, J.—It was charged by information filed by the district attorney of Los Angeles County that appellant forged the name of one Robert Urban to a check for the sum of seven hundred dollars, and that he made the same payable to J. S. Young, indorsed the latter name thereon, and uttered, published, and passed said check with intent to defraud the said Robert Urban and the Security Trust & Savings Bank. A jury found appellant guilty as charged, and he appeals from an order denying his motion for new trial, and from the judgment, alleging insufficiency of evidence, and errors in giving and in refusing to give certain instructions.

It appears that the appellant and said Urban had previously been friends, but that they had not recently met for some time, until shortly before the offense was alleged to have been committed. In March, 1924, Urban testified he received his bank statement and canceled checks, and upon examination of them discovered the check here in controversy, which he immediately returned to the bank with a protest; he further testified that he did not know

Young, had had no dealings with him, and did not sign or issue said check or know of its existence until it came to his attention in the manner stated. When appellant was questioned about the matter, he claimed to have received the check from J. S. Young, with instructions to reopen the latter's account, and produced at the trial a purported power of attorney from Young, reading:

"To whom it may concern:

"I, J. S. Young, do hereby give power of attorney to R. B. McChesney to sign for me any papers pertaining to business during my absence.

"J. S. Young,"

He admitted having opened an account in the name of Young with the check in question, and having checked out moneys on several occasions from said account, but contended that he had authority to do so, and that Young had given him the power of attorney at the Stowell Hotel, in Los Angeles. Appellant told the police, when arrested, that the J. S. Young from whom he had received the check resided at 1238 West Fifty-first Street, Los Angeles, and was a railroad and construction engineer and contractor; bank officers testified that appellant, when opening the account, stated to them that he was the J. S. Young therein named, that he was born in Iowa, was an engineer, at that time was in the army at Manila, or in the Philippine Islands, and gave 1238 West Ffty-first Street as his address. Maude L. Young, a witness for the People, testified that she was the wife of J. S. Young, and that in February, 1924, when said account was opened she was residing with her husband at said address, 1238 West Fifty-first Street; that she had previously met appellant, and knew his wife, but that appellant was theretofore known to her as Robert McChesney; that her husband was born at Ashville, North Carolina, and was engaged in railroad construction work, but was not an engineer, and had never been in the army; she further testified that she was very familiar with his handwriting, and that neither the signature on the check nor on the power of attorney offered by appellant was that of her husband.

Testimony given by appellant upon a former trial of the same case was introduced, from which it appeared that he then swore that he had told the bank teller that Young was born in Ireland; that he did not sign the identification card

at the bank, but that he saw Young sign it; and that he did not know Young's mother, or her maiden name; employees of the bank testified in the record before us that appellant signed the card, and drew the money from the account; and that he then stated that O'Connell was the maiden name of Young's mother. Handwriting experts compared exemplars, and testified positively that none of the writing at the bank or on the so-called power of attorney had been done by Young, but that all, including that admittedly of appellant, was beyond peradventure of a doubt the writing of one and the same person. The jury had all of these facts before them.

The brief for appellant consists largely of a repetition of the evidence presented by the transcirpt. Much of the argument contained in the few remaining pages is devoted to the presentation of questions of fact, to which but slight reference is here necessary.

[1] It is first said that the signed statement of appellant, introduced at the trial, was a declaration of innocence, whereas a confession is restricted to admissions of guilt. Counsel for appellant stipulated to its introduction, and objection to its competency is not made at this time, but it is argued that "In the whole record, there is no evidence connecting the defendant with the crime charged save and except his own statements, and these statements in every connection contain the assertion of innocence." Granting, for the sake of the argument, that appellant at all times asserted his innocence, it is obvious from the record before us that his connection with the transaction was amply established in various ways, and that his frequent assertions did not agree with each other, nor with the facts as detailed by other witnesses. This alone not only created a conflict of evidence, but a serious question as to the innocence of the defendant. (*People* v. *Keyes*, 178 Cal. 794 [175 Pac. 6].) We have carefully reviewed the evidence in this case, and from the brief statement herein, which by no means embraces all of the facts tending to establish the guilt of the appellant, it readily appears therefrom that the evidence, if believed by the jury, would justify a conviction; and the many conflicting statements made by appellant in his various "assertions of innocence" render it only the more im-

perative that an appellate court should not disturb the finding.

[2] It is next asserted that the testimony of certain handwriting experts was unworthy of belief, but the fact that different members of that profession testified on each side in the case at bar, and did not agree, is not a ground for reversal, but rather brings such question within the rule above stated.

[3] Appellant tells us that it is the duty of this court to determine the facts as well as the law, and it is suggested that section 4½ of article VI of the constitution requires an appellate court to "sit as a jury and be subject to all the presumptions that govern the jury in the first instance." We cannot agree with this interpretation of that constitutional provision. Questions of fact, including the credibility of witnesses, the weight to be given to their testimony, and the guilt or innocence of a person on trial before a jury, are exclusively for the jury to decide, and when so determined a reversal is not authorized because of inconsistencies or disparities in the testimony, or because the testimony is susceptible of two reasonable inferences, one looking to the guilt of the defendant, and the other to his innocence; and the mere fact that there is a conflict in the evidence does not give rise to a reasonable doubt of the defendant's guilt. (*People* v. *Billings,* 34 Cal. App. 549 [168 Pac. 396]; *People* v. *Slaughter,* 33 Cal. App. 365, 382 [165 Pac. 44]; *People* v. *Keyes,* 178 Cal. 794 [175 Pac. 6]; *People* v. *Loomis,* 170 Cal. 347 [149 Pac. 581].)

[4] As we have shown, appellant's contention upon the trial was that he indorsed the check for seven hundred dollars, made the deposit, and checked out funds therefrom, under authority of a power of attorney which he claimed to have been executed by J. S. Young. He now assigns as error the refusal of the trial court to give a requested instruction to the jury that they should not consider evidence tending to show that the defendant may have committed other offenses than that for which he was on trial, and that notwithstanding what they might believe with reference to similar offenses by other persons, the defendant was the only person on trial, was charged with but one specific offense, and unless proven guilty thereof beyond a reasonable doubt, must be acquitted. The grounds assigned for this

point are that the defendant was entitled to have the jury charged upon his theory of the case. It is said that two theories were advanced for the defense: First, that the check was issued by Urban, and, second, that it was issued by Young.

The rule invoked by appellant is the law to this extent: That the trial court is required to instruct as to the law pertaining to each class of facts as to which evidence has been adduced. (*People* v. *Buelna,* 81 Cal. 135 [22 Pac. 396]; *People* v. *Newcomer,* 118 Cal. 263 [50 Pac. 405].) Upon the theory of the defense that Urban signed the check there is nothing in the instruction requested which could possibly apply thereto. Besides, the court gave another instruction to the effect that if the jury should find that the signature "Robert Urban" on the check described in the information was the genuine signature of Robert Urban, they should acquit the defendant.

The other theory which appellant claims was presented is that the check may have been signed by Young. An examination of the entire record fails to disclose any evidence that Young affixed the signature of Robert Urban to the check. The only evidence from which such an inference could possibly be drawn is that Urban's testimony and that of others negatives the idea that Urban signed the check, and the defendant denied having signed it, and stated that it was handed to him by Young. It may be that under these circumstances the jury might, if they believed this testimony, have concluded that inasmuch as the check had apparently been in Young's possession, there was a probability that he affixed the signature in question. Under this theory the defendant would be innocent because his participation in the transaction in which Urban was defrauded was without criminal intent and through the inducement of Young. If this defense were accepted it would follow that the power of attorney purporting to have been executed by Young was genuine. At the request of the defendant the court gave the following instruction: "You are further instructed that if you find from the evidence that the defendant in this case, charged with this offense, was innocently drawn into the alleged transaction under such circumstances that he honestly believed that he had the right to do the things which he did then do, then that would

show an absence of intent to commit the crime charged, and if you find that there is any reasonable doubt as to whether there was an intent on the part of the defendant to defraud by the commission of a forgery then you must acquit the defendant.''

This instruction applies to the only hypothesis upon which the defendant could be held innocent except the theory that the check bore the genuine signature of Urban. Having thus informed the jury that under either theory advanced by the defendant a verdict of acquittal must be returned it was not error to refuse to give the further instruction, of which refusal complaint is made, even though it contained a correct statement of the law.

The further assignments of appellant relate to elementary questions of law, presented by instructions universally given, and which have been passed upon repeatedly. The citation of authority supporting the action of the trial court in these respects is unnecessary.

No error appearing, the judgment and order appealed from are affirmed.

Finlayson, P. J., and Works, J., concurred.