[Crim. No. 3501.   Second Dist., Div. Two.   Nov. 27, 1941.]

THE PEOPLE, Respondent, v. LEONA WHITE, Appellant.

Gladys Towle Root for Appellant.

Earl Warren, Attorney General, and Eugene M. Elson, Deputy Attorney General, for Respondent.

MOORE, P. J.—Having been convicted on two counts of the crime of forgery and a new trial having been denied, defendant brings this appeal.

Her sole point for reversal is that the verdicts were contrary to law in that the only evidence tending to convict her of the forgeries was the testimony of her two accomplices, Kenneth Henson and Vernon Howey. Henson was 23 years of age when he met appellant. He was at that time steadily at work at Van's Electric Repair shop at Burbank. He testified that in October, 1940, she employed him to perform

a menial task; that later she employed him to move her into the country. Seemingly to gain his confidence, she made divers statements to him for the purpose of convincing him of her wealth and financial responsibility; of a claim that she had settled, of lands that she owned, of a sale under negotiation of land to the Lockheed Aircraft Company. She employed him to drive her in his car. Although she paid him only one week's wage, he was constantly reassured that her inability to do so was due to her payment of taxes. On their visit to the Lockheed plant, she returned to the automobile with a $20,000 post-dated check, which she explained could not be used until the completion of the escrow but that if he would get some checks, she would cash them for immediate funds and would pay them before they could reach the drawee bank. In the meantime he had made her acquainted with Howey whose testimony parallels that of Henson. Howey had been working for the Bloomfield Company which had an office in association with Van's Electric Repair shop. The trio thereafter operated together. Acting upon appellant's suggestion Henson took three blank checks from the check book of Van's Electric Repair Company and with the pen of appellant's landlady drew them for the respective sums of $19.76, $23.64 and $24.46 in favor of E. A. De Bode, an erstwhile consort of appellant and signed them with a fictitious name.

Later Howey took six checks from the office of the Bloomfield Company and inserted the amount upon each with the check protector. Henson prepared two of them and Howey prepared four with Henson's fountain pen under the direction of appellant at her home for a total of $130.10, five of them being in the sum of $22.10. All were made payable to appellant and signed with the name of R. L. Bloomfield. Henson drove the trio to various markets at which appellant cashed the checks, made a few small purchases and kept all of the money but $9.

It was stipulated at the trial that all of the six checks bearing #895–900 were forgeries; that they were prepared at her home by her confederate; and that all six were payable to appellant and endorsed and cashed by her.

When confronted by the police with the six checks bearing her endorsement, appellant admitted that the signatures were her own; that she received and cashed them all on the

same day; that she had inserted on all checks "73 North Magnolia" although she then lived at "#71 North Magnolia"; that Henson had driven her to the various market places where she cashed the checks and Howey was present. At the same time she denied practically all the statements later detailed by Henson on the witness stand and maintained that Howey had called at her home to ask her to cash a check for $22.10, the odd amount being used to deceive his partner.

At the trial also she denied making to Henson any of the statements he had accredited to her or that she had caused him or Howey to write any checks. She testified that she had known Howey as Bloomfield, half-owner of a soap factory a short distance from her home; that on December 28, the "boys" lunched with her and drove her to Sears Roebuck in Hollywood where she loaned them money to buy clothing and shoes; that they visited Palm Springs and upon their return they owed her $129; that on January 3, she demanded her money in order to make a trip to Arizona; that Howey drew a check from his pocket and wrote it out for $22.10; that Howey told her that he had to write six checks; that his firm owed five bills for $22.10 each and one for $19.10; that in that way he would deceive his partner into the belief that he was paying labor and not spending; that on January 4 Howey returned and made out the six checks; that thereupon Henson and Howey took her to six different markets at each of which she cashed a check; that after obtaining these funds at 11 p. m., they arranged to go to Arizona; that at 5 o'clock on the morning of January 5 she was up and had everything packed for the journey; that they drove to Las Vegas, Nevada, where they gambled and drank liquor; that she did not sleep wondering if those checks were good; that following an argument with Henson, when he told her the checks were forged, she gave him $129 to make good the checks and "thought no more about them"; that they visited points in Arizona, returned by way of Riverside and Victorville and arrived in Los Angeles 33 days after their departure; that she located on New Hampshire Street where she was residing at the time of her arrest, February 13, 1941; that she had been at one time engaged to De Bode, lived under that name and cashed a check at Sears Roebuck

at Riverside by endorsing it "Leona De Bode" although she had left him some time before.

The contention that there is not sufficient corroboration of her two accomplices is without support. The record is surfeited with proof of appellant's guilt aside from the testimony of the two wayward boys. The soap factory in which she says she understood Howey owned one-half interest was only half a block from her residence. While she was believing, according to her testimony, that Howey was Bloomfield, the soap manufacturer who had presented her with perfume marked with the price of $25.50 upon it, yet she admitted that he came to the cafe where she worked at a wage of $2 per day and ate his meals for which she paid because of his impecunious circumstances and that she supplied him with money to buy his clothing. Thus, out of her own mouth she connected herself with the crimes. The *corpus delicti* was established in each case by the testimony of Howey and Henson. Corroboration of such proof is not required. (Penal Code, sec. 1111.) In order to convict upon the testimony of an accomplice, it is necessary only to connect the accused with the commission of the crime by proof other than that of the accessories. If, by her extrajudicial declaration, or by her testimony or by her stipulation in open court, her participation in the crimes was established, the cited section will not shield appellant from the wrath of the law if from such proof the jury believed that she uttered the checks intending to defraud, as indeed they did.

She informed the officer that this soap manufacturer had called at her home to cash a check; at the trial she testified that she had loaned him money and that the checks were in repayment of her loans. The signature of "R. L. Bloomfield" on two checks was so dissimilar to that on the other four that she could not have believed the author in good faith. She could not have believed that the checks were in payment for labor; they were all but one for the same amount and all were made payable to herself. Still other inconsistencies and contradictions in her testimony are significant in evaluating the corroboration she supplied, namely: (1) she cashed the check at Riverside under the name of Leona De Bode though she had long prior thereto ceased her association with the man of that name; (2) she cashed each

check at a different market; (3) all of the checks were for odd amounts; (4) one check for $22.10 she said was in repayment of a $25 loan; (5) although she insisted that she knew Howey as Bloomfield, the soap manufacturer, she testified that she knew him by the nickname of Vern; (6) she paid for his meals at the cafe where she worked because he was broke; (7) she bought him clothes and loaned him money; (8) moreover, she herself got the money on the checks; (9) she fled with her confederates from the state, sojourned in Nevada where she lost and won at gambling, visited various points in Arizona, traveled and visited for 33 days before her return to the scene of her crimes. Upon arriving at Los Angeles she did not loiter near the cafe, or at Pacoima or Burbank, where she was known but domiciled herself in the heart of the metropolis.

Without analyzing all of the evidence, it must be obvious that the jury was amply justified in finding that appellant knew that Howey was not Bloomfield; that the checks were drawn for the purpose of cheating those who might honor them; that she passed them with knowledge that they were so drawn; that they were therefore forgeries with the commission of which appellant connected herself by her own testimony.

Corroborating evidence in such cases is sufficient if it tends to connect the accused with the crimes charged, even though it were slight if it stood alone. (*People* v. *Martin*, 19 Cal. App. 295 [125 Pac. 919].) It was not necessary that the corroborating proof be sufficient to establish the precise facts attested by the accomplice. (*People* v. *Tinnin*, 136 Cal. App. 301, 304 [28 Pac. (2d) 951]; *People* v. *Solomon*, 6 Cal. Unrep. 305 [58 Pac. 55].) Defendant's own testimony proved her participation. Her contradictory statements with reference to the crime convinced that she was not truthful; her immediate flight to distant points showed her fear of being apprehended; her subsequent use of a fictitious name demonstrated her zeal to conceal her whereabouts; all these are such evidence as were calculated to prove her connection with the offenses of which she was accused and convicted. (*People* v. *Armstrong*, 114 Cal. 570 [46 Pac. 611]; *People* v. *Sullivan*, 144 Cal. 471, 473 [77 Pac. 1000]; *People* v. *Taylor*, 70 Cal. App. 239 [232 Pac. 998]; *People* v. *Cleveland*, 49 Cal. 577.)

Since. it appears from a review of the evidence that appellant's connection with the crime was fairly and reasonably to be inferred, the corroboration was sufficient and the verdict must not be disturbed. (*People* v. *Nikolich,* 93 Cal. App. 356 [269 Pac. 721].) Inasmuch as it could have been fairly inferred from the testimony of appellant that she knew Vern was Howey and not Bloomfield and that he was not the soap and perfume manufacturer but a penniless young man of 24 years who lived from hand to mouth by his daily wage unless he enjoyed the bounty of her sinful gains, the verdict cannot be altered. (*People* v. *Wiley,* 33 Cal. App. (2d) 424 [91 Pac. (2d) 907] ; *People* v. *Payton,* 36 Cal. App. (2d) 41 [96 Pac. (2d) 991].) █ The intent to defraud and appellant's knowledge of the forgeries were questions for the jury and both were properly inferred from her statements and her testimony. (*People* v. *Newland,* 15 Cal. (2d) 678 [104 Pac. (2d) 778] ; *People* v. *Roche,* 74 Cal. App. 556, 559 [241 Pac. 279] ; *People* v. *Chesney,* 72 Cal. App. 570 [237 Pac. 793].)

The authorities cited by appellant (*People* v. *Shaw,* 17 Cal. (2d) 778 [112 Pac. (2d) 241] ; *People* v. *White,* 35 Cal. Cal. App. (2d) 61, 69 [94 Pac. (2d) 617] ; *People* v. *Kempley,* 205 Cal. 441 [271 Pac. 478] ; *People* v. *Robbins,* 171 Cal. 466 [154 Pac. 317]) are readily distinguishable. There was no corroborative evidence in those cases but suspicion only.

The judgments and order are affirmed.

Wood, J., and McComb, J., concurred.