[Crim. No. 6850. Fourth Dist., Div. One. June 17, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY DAVID FISHER, Defendant and Appellant.

COUNSEL

Harold F. Tyvoll and James Self, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jay M. Bloom and M. Howard Wayne, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BROWN (Gerald), P. J.—Gregory David Fisher appeals after a jury found him guilty of burglary (and while committing the burglary he was armed with a deadly weapon and assaulted a person), forcible rape, oral copulation (with the finding it was done by means of force and violence), sodomy, assault with a deadly weapon (with a finding he used a firearm) and grand theft. He was diagnosed as a mentally disturbed sex offender and after examination was committed as a mentally retarded sex offender pursuant to Welfare and Institutions Code section 6509.

On October 18, 1973, Fisher entered the apartment of Monty Hewitt, threatened her with a pair of sewing scissors and forced her to participate in various sexual acts. The intruder asked Hewitt if her family had a gun. When she told him they did not, he asked, "If you don't, then what's this?" and stuck her husband's pistol in her side. Fisher then threatened Hewitt and her family with violence if she reported the attack. As he was leaving through a window, Fisher told Hewitt he worked at the Sterling

Commissary. Hewitt identified him at the Commissary some eight days later. Fisher was taken into custody and given his *Miranda* rights. He gave an alibi and made the statement, "It's a game to me, man."

■ The People first argue the appeal must be dismissed since there is no final judgment or order from which to appeal. Penal Code section 1237 provides: "An appeal may be taken by the defendant: 1. From a final judgment of conviction . . . . A sentence, an order granting probation, or the commitment of a defendant for insanity, or the indeterminate commitment of a defendant as a mentally disordered sex offender shall be deemed to be a final judgment within the meaning of this section. The commitment of a defendant for narcotics addiction shall be deemed to be a final judgment within the meaning of this section 90 days after such commitment. Upon appeal from a final judgment the court may review any order denying a motion for a new trial. . . ."

Section 1237 does not set out a commitment for mental retardation as an appealable order. However, Fisher was also found to be a mentally disordered sex offender who, because of his attitude and low intelligence, would not benefit from treatment in a state hospital. In such an instance, the court should return the offender to the court where he was tried for sentencing, an indefinite commitment in an institution for mentally disordered sex offenders, or "such other suitable disposition of the case as the court deems necessary." (Welf. & Inst. Code, § 6316.) Here the judge held another hearing on the possibility Fisher was mentally retarded; on finding he was, Fisher was sent to an institution. A review of the record shows the criminal proceedings remain suspended under Welfare and Institutions Code section 6302, subdivision (a); the mentally disordered sex offender proceedings have never been terminated. Fisher was committed as a mentally disordered sex offender who is also retarded. This order is appealable under Penal Code section 1237.

■ Fisher contends his trial counsel was incompetent because he failed to investigate or present the defense Fisher was an idiot and incapable of committing the crime (Pen. Code, § 26). However, the only defense introduced at trial was alibi. To have also urged the defense of incapacity is inconsistent; it would have weakened Fisher's primary defense. This is a matter of trial tactics which this court will not review (*People* v. *Brooks,* 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383]). Fisher concedes it may have been trial tactics. But he continues, counsel did not investigate or consider this defense. Fisher argues, even though the decision not to present the defense of idiocy was "tactical," his attorney was ineffective because he made the decision without sufficient

information (*In re Saunders,* 2 Cal.3d 1033, 1049 [88 Cal.Rptr. 633, 472 P.2d 921]). He suggests the attorney should have been alerted to his marginal capacity because of the circumstances of the crime in that the perpetrator told the victim where he worked. But, criminals often leave clues of their identity near the scene of the crime. This is not unique to mental retards. This alone would not as a matter of law alert an attorney to lack of capacity. Likewise the fact that a black burglar states he wants a radio and his human rights or tells the police "it was a game to him" is not sufficiently inappropriate to cause the defense attorney to move for appointment of a psychiatrist. This is not sufficient to find ineffective counsel.

Fisher admits the foregoing comments might have been insufficient to put his counsel on notice about his idiocy during the trial. But, if it were, then on receiving the probation report, which stated Fisher had an IQ of 46, was "illiterate" and was "mentally deficient," his attorney should have known this new evidence warranted a motion for new trial. However, Fisher overlooks the fact that imbecility is no defense against a crime unless its existence deprived the individual of the power to distinguish between right and wrong (*People* v. *Keyes,* 178 Cal. 794, 801 [175 P. 6]; overruled on other grounds in *People* v. *Gorshen,* 51 Cal.2d 716, 734 [336 P.2d 492]). Here, there is some evidence Fisher is mentally deficient; but there is no indication his deficiency is so severe or so specific that he cannot distinguish right from wrong. In fact, there is substantial evidence Fisher did know the difference since he threatened the victim and her family with violence if she reported the attack; and he called it a game. Even if the attorney should have recognized Fisher's lack of intellectual ability, there is no evidence to indicate he was incapable of committing the crime because of idiocy. His counsel was not inadequate.

■ Fisher contends he and other mentally retarded persons are denied equal protection of the law because there is no provision permitting them to enter a plea of "not guilty by reason of idiocy" and there is no special hearing on this issue, although there are such provisions for insane persons. It should be noted that even though idiocy cannot be raised by plea it can be raised as a defense. Thus, the opportunity to put this question in issue does exist. In addition, the asserted denial of equal protection is not due to a law which denies a fundamental right. Rather, Fisher complains Penal Code section 1016, which permits a plea of not guilty by reason of insanity, does not go far enough to aid those who are mentally retarded. This is insufficient to find a denial of equal protection since the Legislature need not solve all

supposed evils at once, but rather may take one step at a time in addressing itself to the phase of the problem which seems most acute to it (*Katzenbach* v. *Morgan,* 384 U.S. 641, 657 [16 L.Ed.2d 828, 839, 86 S.Ct. 1717]). There was no denial of equal protection.

■ Lastly Fisher complains the trial court committed error in failing to exclude his extrajudicial statement, "It's a game to me, man," because there was no valid waiver of his *Miranda* rights. After being advised of his *Miranda* rights Fisher was told: " 'Do you understand each of those rights I've explained to you? Having these rights in mind, do you wish to talk to us now?' " Fisher replied, " 'I sure do.' " He now maintains since he was asked a compound question which would have been subject to objection at trial, there was no valid waiver. In addition, he contends it cannot be assumed his response was to the first part of the question. And Fisher suggests his mental retardation precluded him from validly consenting or waiving his rights (see *In re Roderick P.,* 7 Cal.3d 801, 811 [103 Cal.Rptr. 425, 500 P.2d 1]). Under some circumstances one or more of these contentions might be meritorious. However, here when Fisher was asked to explain what he meant by his comment, "It's a game to me, man," he responded he did not want to talk about it. In exercising his rights Fisher demonstrated he understood them. There was no error in admitting his extrajudicial statement.

Judgment affirmed.

Ault, J., and Coughlin, J.,* concurred.

A petition for a rehearing was denied June 23, 1975, and appellant's petition for a hearing by the Supreme Court was denied August 13, 1975.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.