[Crim. No. 3316. First Dist., Div. Two. Sept. 10, 1957.]

THE PEOPLE, Respondent, v. NATHANIEL CASTIEL et al., Appellants.

Terry A. Francois and Arthur D. Klang for Appellants.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

DOOLING, J.—The appellants were charged jointly in an indictment in five counts, one of conspiracy to violate section 11500, Health and Safety Code, two counts charging separate sales of heroin and two counts charging transportation of heroin. Appellant Castiel was convicted on all five counts and appellant Benjamin of conspiracy and on one count each of sale and transportation, the other two counts having been dismissed as to her.

The prosecution's evidence showed that an informer in the presence of three narcotics officers on March 2, 1956, talked on the telephone to a man called "Nate," asked for a "couple of spoons" and was told to "go to the coffee shop Sears-Roebuck." The telephone number called was that of the telephone located in the home of appellant Benjamin and her husband. One of the officers "listened in" on the conversation on an extension telephone. The informer was searched and given $50 in marked currency. The three officers went with the informer to Sears-Roebuck's store. One officer entered the coffee shop with the informer. Appellant Castiel was seen to drive into the parking lot, leave his automobile and enter the coffee shop. One of the officers testified to seeing a transfer of currency from the informer to Castiel and a small white package from Castiel to the informer. Another saw a meeting of the hands. After Castiel left the informer gave one of the officers two small paper wrapped packages which were found to contain heroin.

Later the same day a second telephone call was made to the same number. A woman answered the informer who said she was "Flo," and when asked for "a couple of more spoons" directed the informer to go to Turk and Baker Streets. When

asked: ''Will you bring it?'' she replied: ''No, I'll send Nate.'' The informer was again searched and given another $50 and proceeded with the officers to the rendezvous. The informer stood on the corner, within sight of the officers. Castiel drove up in an Oldsmobile identified as belonging to the husband of appellant Benjamin. Informer entered the Oldsmobile and remained therein for a short time. When the Oldsmobile had driven away one of the officers received two ''bindles'' of heroin from the informer. Another officer followed the Oldsmobile to appellant Benjamin's residence, where Castiel parked it and entered the house.

Both appellants took the stand and flatly denied the testimony of the officers. It will be observed that the evidence against Castiel is quite direct and that against Benjamin quite weak, depending on inferences from circumstantial evidence.

The most important question in the case arises from the refusal of the agents on cross-examination to reveal the name of the informer, claiming the information privileged under section 1881, Code of Civil Procedure. The trial court sustained objections on this ground. It is appellants' claim that where an informer, as here, is an active participant the privilege must give way to the constitutional right of the defendants to produce him as a witness in their defense.

We may well take as a starting point in the discussion of this question the language of the Missouri Supreme Court in *State* v. *Tippett*, 317 Mo. 319 [296 S.W. 132, 135] (quoted with approval by our own Supreme Court in *Powell* v. *Superior Court*, 48 Cal.2d 704, 709 [312 P.2d 698]): ''That it was desired that the state's evidence remain undisclosed, partakes of the nature of a game, rather than judicial procedure. The state in its might and power ought to be and is too jealous of according a defendant a fair and impartial trial to hinder him in intelligently preparing his defense and in availing himself of all competent material and relevant evidence that tends to throw light on the subject-matter on trial.'' Our Supreme Court in the case in which this language was quoted declared it to be ''. . . the policy of this state that the goal of criminal prosecutions is not to secure a conviction in every case by any expedient means, however odious, but rather, only through establishing the truth upon a public trial fair to defendant and the state alike.'' (*Powell* v. *Superior Court*, *supra*, 48 Cal.2d 704, 707.)

At every essential step tending to fix guilt upon these appellants the testimony shows that the undisclosed informer was a

principal actor and, if called to the stand, would be a material and important witness. He placed the two telephone calls, which were monitored by the officers, and it was he who is alleged in their testimony to have spoken over the telephone to each of the appellants. It is he in both cases who is alleged in the testimony to have purchased and received narcotics from the appellant Castiel. The appellants in this case both took the stand and denied the alleged telephone conversations and the alleged sales of narcotics. If the undisclosed informer were not an informer but a stranger to them and the officers had overheard and testified concerning the identical telephone conversations no one can doubt that the officers on cross-examination could be asked the identity of the person who had made the telephone calls and to disclose it if known to them. If the officers had observed the transfer of a package from a defendant to another person not an informer under the same circumstances as here and testified to that fact no one can doubt that on cross-examination the officers would be required to disclose the identity of the person, if known to them, to whom, according to their testimony, the officers had seen the package transferred. The possible importance of this person's identity to the defense is just as great whether he happens to be a government informer or not. In either event, if the defendants had the opportunity to interview him and call him as a witness, he might contradict the testimony of the officers completely or in part. He might deny that he was present at all, or participated in any of the transactions. He might corroborate the officers as to the telephone calls and the purchases of narcotics but testify that the persons to whom he talked and from whom he made the purchases were persons other than the appellants. It would be intolerable if the government could convict its citizens of crime and thereby deprive them of their liberty and civil rights while denying them the opportunity to produce a witness or witnesses to the alleged crime, whose identity is known to the witnesses who testify against him. ██ The defendant is entitled as a matter of due process of law to be allowed to interview and produce any witness who might give evidence favorable to his defense, and when a witness who testifies to the commission of a crime testifies that another person or other persons were also present, and particularly where such other person or persons according to the testimony were active participants, the right of the defendant to the disclosure of the identity of such person or persons on cross-examination seems too clear for successful

contradiction. If this was a case without precedents logic and the basic constitutional guaranty of due process would compel this conclusion, but it is not a case without precedents.

The cases generally hold that where in the trial of a criminal case the basic right of a defendant to produce evidence which might exonerate him comes into conflict with a privilege of the government to withhold such evidence from disclosure the government's privilege must in general give way to the basic right of the defendant. (*Roviaro* v. *United States,* 353 U.S. 53 [77 S.Ct. 623, 1 L.Ed.2d 639]; *People* v. *Lawrence,* 149 Cal.App.2d 435 [308 P.2d 821]; *Portomene* v. *United States,* 221 F.2d 582; *United States* v. *Conforti,* 200 F.2d 365; *Sorrentino* v. *United States,* 163 F.2d 627; *Wilson* v. *United States,* 59 F.2d 390; *United States* v. *Blich,* 45 F.2d 627; *United States* v. *Keown,* 19 F. Supp. 639; *United States* v. *Coplon,* 185 F.2d 629; *United States* v. *Andolschek,* 142 F.2d 503; *People* v. *Ramistella,* 306 N.Y. 379 [118 N.E.2d 566]; *Parsons* v. *State,* 251 Ala. 467 [38 So.2d 209]; *Centoamore* v. *State,* 105 Neb. 452 [181 N.W. 182]; *People* v. *Davis,* 52 Mich. 569 [18 N.W. 362]; *Crosby* v. *State,* 90 Ga. App. 63 [82 S.E.2d 38]; *Smith* v. *State,* 169 Tenn. 633 [90 S.W.2d 523]; *Mapp* v. *State,* 148 Miss. 739 [114 So. 825]; *Hill* v. *State,* 151 Miss. 518 [118 So. 539].)

Many, but not all, of these cases deal with the informer privilege, but all deal with some asserted governmental privilege which in each case was held to be subordinate to the basic right of the defendant to produce evidence which might prove important or vital to his defense.

The Roviaro case, *supra,* 353 U.S. 53 [77 S.Ct. 623, 1 L.Ed. 2d 639] and the Lawrence case, *supra,* 149 Cal.App.2d 435 (decided by this court without benefit of the reasoning in, or knowledge of, the Roviaro decision, since the Roviaro opinion was filed in Washington on the day before the filing of the Lawrence opinion here) both dealt with the precise question here involved, the right of the defendant to have the identity of the participant-informer disclosed on cross-examination of the officer-witness who testified about the transaction in which the informer took an active part. In both it· was concluded that in such circumstances the government's privilege must yield to the defendant's right to be informed of the identity of the informer-participant. The attorney general seeks to distinguish these cases on the ground that here, as to the two telephone calls and one sale at least, there was precise eyewitness testimony of prosecution witnesses sufficient to fix

appellants' guilt. The cases, in principle, cannot be logically distinguished on this ground. In the *Roviaro* case there was in fact much eyewitness testimony. The basic right of the defendants, however, cannot depend on this factor. No one knows what the undisclosed informer, if produced, might testify. He might contradict or persuasively explain away the prosecution's evidence. It is the deprival of the defendants of the opportunity of producing evidence which *might* result in their exoneration which constitutes the error in this case, and we cannot assume because the prosecution evidence may seem strong that the undisclosed evidence might not prove sufficient to overcome it in the minds of the jurors. To do so is to reason that in no case can a defendant suffer prejudice from the suppression of evidence which may be favorable to him if the prosecution has produced what seems to be a strong eyewitness case of the defendant's guilt.

The suggestion that appellants must have known the informer's identity because they dealt and talked with him finds its complete answer in the fact that they categorically denied on the witness stand that they did either.

Appellant Benjamin moved to set aside the indictment on the ground that this defendant had been indicted without reasonable or probable cause. The officer who listened to the second telephone conversation on an extension telephone testified that the female voice which he heard "appeared to be the voice of Floreen Benjamin." ▆ The evidence to support an indictment need not be sufficient to support a conviction. ▆ "Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183 [281 P.2d 250].) The evidence was sufficient to meet this test.

The court reporter was permitted to testify to a conversation which he overheard between appellant Castiel and his attorney during a recess. The reporter testified that he was in plain sight and no question of surreptitious eavesdropping is presented. ▆ The attorney-client privilege does not prevent a third person openly present at and who overhears a conversation between attorney and client from testifying. (*City & County of San Francisco* v. *Superior Court,* 37 Cal.2d 227, 236 [231 P.2d 26, 25 A.L.R.2d 1418]; *Ver Bryck* v. *Luby,* 67 Cal.App.2d 842, 844 [155 P.2d 706]; 8 Wigmore on Evidence, 3d ed., § 2326, pp. 629-630.)

▆ Nineteen days elapsed after March 2, 1956, before the

arrest of appellants on March 21. On cross-examination of one of the officers this delay in making the arrests was emphasized. In rebuttal the officer was permitted to testify that the reason for the delay was that they had information that appellants were expected to receive more narcotics. It was within the discretion of the trial court to permit the witness to rebut any adverse inference which the jury might draw from the delay in arrest so emphasized on cross-examination. (*People* v. *La Macchia,* 41 Cal.2d 738, 749 [264 P.2d 15] ; *People* v. *Corey,* 8 Cal.App. 720, 725 [97 P. 907].)

Appellant Benjamin not only denied that she had any connection with the sale or transportation of narcotics but she further testified that her husband's Oldsmobile, alleged to have been driven by Castiel in the second delivery of narcotics on March 2, was in a garage undergoing repairs from some time in February to March 15. ■ She was asked:

"Q. Well, then, Mrs. Benjamin, isn't it a fact that when the State of California took your car by forfeiture, you didn't even protest?

"  .  .  .  .  .  .  .  .  .  .  .  .  .

"Q. You didn't defend it, did you? A. I don't have any money to defend it."

The question was objected to on the expressed grounds: "The person may not defend it, because it may not be worth the amount that it costs to defend it and, which was the exact case here."

The objection did not raise any of the grounds now urged on appeal and for that reason we need not notice them. (*People* v. *Agajanian,* 97 Cal.App.2d 399, 405 [318 P.2d 114] ; *People* v. *Sellas,* 114 Cal.App. 367, 378 [300 P. 150].)

■ Appellant Castiel was similarly asked if it was not true that in the proceeding to forfeit his automobile he refused to testify on the ground that it might incriminate him. The court limited the reply to the purpose of impeachment. Castiel's answer was that he refused to answer on advice of his counsel. "Personally, I wanted to testify." The evidence, limited to impeachment only, was proper. (*People* v. *Kynette,* 15 Cal.2d 731, 749-750 [104 P.2d 794].)

Claimed acts of misconduct of the district attorney and of the court need not be noticed since we are entitled to assume that they will not recur.

■ In the event of a retrial it seems clear that on the evidence produced on this trial defendants could not properly be convicted of both transportation and sale of the same nar-

cotics, since the only transportations proved were necessarily incident to the sales. (*People* v. *Roberts,* 40 Cal.2d 483, 491 [254 P.2d 501].)

For the error first above noted the judgment and order denying a new trial is reversed as to both appellants.

Kaufman, P. J., and Draper, J., concurred.

A petition for a rehearing was denied October 10, 1957, and respondent's petition for a hearing by the Supreme Court was denied November 5, 1957.