[Crim. No. 3379.   First Dist., Div. Two.   Nov. 21, 1957.]

THE PEOPLE, Respondent, v. JACK MAST, Appellant.

Arthur D. Klang for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Victor Griffith and Marvin J. Christiansen, Deputy Attorneys General, for Respondent.

KAUFMAN, P. J.—The appellant, Jack Mast, and one Morris Cooper were charged jointly in an indictment on three counts of bookmaking in violation of subdivisions two, four and six of Penal Code, section 337a, and one count of conspiracy to violate Penal Code, section 337a. Appellant's oral motion to dismiss the indictment pursuant to Penal Code, section 995, was denied. The appellant pleaded not guilty to all counts charged. Appellant waived a jury and was found guilty as charged on each of the four counts and was sentenced to imprisonment in the county jail for one year, the sentences to run concurrently. This appeal is taken from the judgment and the order denying the motion for a new trial.

Appellant and Morris Cooper were coowners of a cigar store at 2260 Chestnut Street, San Francisco. William Koenig, a member of the Gambling Detail of the San Francisco Police Department knew that both appellant and Cooper had been arrested previously for bookmaking. Sergeant Mullan testified that appellant had been arrested in 1952 for bookmaking on the Chestnut Street premises. The captain of the Northern District in which appellant's place of business is located had received anonymous letters and telephone calls wondering why the police allowed bookmaking to be carried on at appellant's store. As a result, on 25 different occasions between February and July, 1956, various police officers conducted an intermittent surveillance of appellant's store through the window of Foster's Cafeteria across the street. On numerous occasions, these officers saw customers reach for their wallets and extend what appeared to be money to the appellant and receive no merchandise in return. Almost always after one of these transaction, the appellant and Cooper would leave the store and make a telephone call at a nearby bar. On several occasions, one just four days before the arrest, the police used a confidential informer whom they observed handing money to the appellant and who then told them that he had orally placed bets with the appellant and that he thought the records were kept on the adding machine. Neither the officers nor the informer ever saw the appellant making any notes or memorandums. Appellant's counsel was not permitted to ask questions to establish the reliability or identity of the informer at the trial.

On July 14, 1956, at a little after 1 p. m., the informer entered appellant's store wearing a concealed radio transmitter which broadcast to a patrol car a block away. Sergeant Mullan in the patrol car listened to a male voice speak

to a person named "Jack" and heard a conversation involving the name of a horse and two dollars to win. Sergeant Mullan took no notes of the conversation and did not recognize the voice of the informer or that of the person who replied. A baseball game was being televised at this time and there were several people in appellant's store. About five minutes after the above conversation, the appellant left his store and entered the Spar Tavern across the street where he was arrested in the phone booth by Sergeant Mullan. A search of the appellant's person revealed a slip of adding machine paper with the following numbers, 264, 354, 880, and eighteen dimes. The police officers then searched the appellant's store and seized pads and slips of paper, a Daily Bulletin Sports Review for July 14, a racing form and an adding machine. It is conceded that both the arrest of the appellant and the search of his store were made without a warrant.

In the opinion of the prosecution's expert witness, the slip of paper found on the appellant was a record of bets as the numbers on the slip correlated with figures appearing in the Daily Bulletin for July 14, 1956. The expert also testified that the various slips of paper taken from the rear of appellant's store were records of bets in a manner used by bookmakers in San Francisco as well as the "owe sheet" found in the cash register. When the officers showed appellant the "owe sheet" and asked him what it represented, appellant replied that it represented sums of money owed to "us" and that someone had left the Daily Bulletin and racing form at the store.

The determinative issue on appeal is that appellant was denied the right to ascertain the identity of and examine the informer whose participation and information caused his arrest and conviction. It is unnecessary to discuss the appellant's other contentions on appeal, as we think the appellant here was entitled to ascertain the identity of the informer. The record discloses that a stipulation was entered into by and between the People and the defendant agreeing that all of the evidence that was taken on the *voir dire* could be considered as being submitted on the trial subject to all of the defendant's objections. On the record, therefore, defendant was refused the identity of the informer both on *voir dire* and at the time of the trial.

We need quote only from this court's recent opinion in *People* v. *Castiel*, 153 Cal.App.2d 653 at 658 and 659 [315 P.2d 79] : "The Roviaro case, *supra*, 353 U.S. 53 [77 S.Ct. 623, 1

L.Ed.2d 639] and the Lawrence case, *supra*, 149 Cal.App.2d 435 (decided by this court without benefit of the reasoning in, or knowledge of, the Roviaro decision, since the Roviaro opinion was filed in Washington on the day before the filing of the Lawrence opinion here) both dealt with the precise question here involved, the right of the defendant to have the identity of the participant-informer disclosed on cross-examination of the officer-witness who testified about the transaction in which the informer took an active part. In both it was concluded that in such circumstances the government's privilege must yield to the defendant's right to be informed of the identity of the informer-participant. . . . No one knows what the undisclosed informer, if produced, might testify. He might contradict or persuasively explain away the prosecution's evidence. It is the deprival of the defendants of the opportunity of producing evidence which *might* result in their exoneration which constitutes the error in this case, and we cannot assume because the prosecution evidence may seem strong that the undisclosed evidence might not prove sufficient to overcome it in the minds of the jurors. To do so is to reason that in no case can a defendant suffer prejudice from the suppression of evidence which may be favorable to him if the prosecution has produced what seems to be a strong eyewitness case of the defendant's guilt," and *People* v. *Lawrence,* 149 Cal.App.2d 435 [308 P.2d 821], also decided by this court.

It is our view that the error in refusing appellant the right to ascertain the identity of the informer was prejudicial.

Judgment reversed.

Dooling, J., and Draper, J., concurred.

A petition for a rehearing was denied December 20, 1957, and respondent's petition for a hearing by the Supreme Court was denied January 15, 1958. Spence, J., was of the opinion that the petition should be granted.