[Crim. No. 3406. First Dist., Div. Two. Apr. 29, 1958.]

THE PEOPLE, Respondent, v. FRANK TAYLOR, Appellant.

754

Frank Taylor, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Richard S. L. Roddis, Deputy Attorney General, for Respondent.

KAUFMAN, P. J.—By an information containing two counts, the defendant, Frank Taylor, was charged with two violations of section 11500 of the Health and Safety Code, and with two prior convictions for narcotic offenses in this state, one a felony in violation of Health and Safety Code, section 11160 (now 11500) in 1944, and one, a misdemeanor, violation of Health and Safety Code, section 11721 in 1955.

The first count charged the unlawful transportation of heroin; the second, the unlawful sale of heroin, both events being charged having occurred on November 7, 1956, in San Francisco. Defendant admitted the prior misdemeanor con-

viction and pleaded not guilty to the other charges. By a jury he was found guilty of all the charges and sentenced on the two counts, the sentences to run concurrently. Defendant appeals from the judgment and from the order denying his motion for a new trial.

The facts are as follows: State Narcotics Inspector Ohlson was told by a confidential informant, one Frank Thomas, also known as "Tommie" that he had arranged to meet the defendant to make a purchase of heroin, between 2:30 and 3:30 p. m. on November 7, 1956, at the corner of Pierce and Eddy Streets in San Francisco. Before the appointed hour on November 7, 1956, Inspector Ohlson and Inspector Logan of the San Francisco Police Department met Frank Thomas at the State Building, stripped him, and thoroughly searched his clothing and his mouth. They gave him two $10 bills, the serial numbers of which the officers had recorded. Thomas had no personal property on his person except his clothing and these two bills. The officers drove Thomas to the corner of Pierce and Eddy Streets at 2:30 p. m. They let Thomas out of the car and parked on the east side of Pierce Street about 100 to 150 feet from the corner. Soon the defendant appeared, driving west on Eddy Street in a dark colored 1950 Kaiser automobile. The defendant stopped to pick up Thomas, who got in the car on the right side and sat in the front seat, and then proceeded west on Eddy Street about three-fourths of a block, and then stopped in the traffic lane for about one minute. The officer's car followed the defendant at a distance of about 100 to 150 feet. Thomas got out of the defendant's car and walked east to the officers' car while the defendant's car continued west on Eddy Street. The inspectors had Thomas under continuous observation from the moment he left their car until he returned and handed them a bindle containing five grains of heroin. During this period no person except the defendant had contact with Thomas. The defendant and Thomas were alone in the defendant's car.

The officers then returned to the State Building with Thomas and searched him again. He did not have the two $10 bills in his possession.

On January 10, 1957, the defendant was arrested by the same two officers in Foster's Restaurant on Fillmore Street between McAllister and Fulton. The officers recognized the appellant as the person they had observed in the car with Thomas on November 7, and as the person previously pointed out to them as "Skippy" or "Frank Taylor." The officers

had delayed the arrest for the November 7th transaction as they wanted to further investigate the defendant and ascertain his source of supply. Another sale to Frank Thomas had been arranged for November 8, but on this date the defendant was arrested by the San Francisco police on vagrancy charges. At this time Officers Ohlson and Logan went to the Northern Station to talk to the defendant. On November 8, as well as on January 10, the defendant had numerous hypodermic puncture marks on the vein lines of his arms, some of them of recent origin.

The defendant took the stand and denied any connection with the sale transaction of November 7, 1956. He denied knowing Frank Thomas. He admitted owning a Kaiser automobile in November 1956, but stated that it was a 1947 rather than a 1950 model. He denied the possibility that anyone other than himself was driving his car on November 7, 1956, and admitted he might have been in the area on that day, but could not remember what he had been doing. He admitted being known by the nickname "Skippy." He admitted that he knew what heroin was and admitted being addicted to it at one time, but stated he had not used the drug since 1955.

Defendant's first major contention is that the fact that the People did not call the informant, Frank Thomas, as a witness for the prosecution was a denial of his right to confrontation. The case against the defendant rested entirely on the circumstantial evidence of the two police officers who witnessed the sale transaction. ▇ The right of the accused to be confronted with witnesses is the right to have the witnesses testify in his presence and the right of the accused to cross-examine them; it is not required that all witnesses or persons who may have knowledge of the crime be produced in court or called to testify. (*People* v. *O'Neill,* 78 Cal.App.2d 888 [179 P.2d 10].)

▇ The defendant next contends that the People failed to properly reveal the identity of the informant as required by *People* v. *Lawrence,* 149 Cal.App.2d 435 [308 P.2d 821], and *People* v. *Castiel,* 153 Cal.App.2d 653 [315 P.2d 79], and that the trial court failed to grant him sufficient time to locate the informant. There is no merit in this contention. The record indicates that on cross-examination, Inspector Ohlson disclosed the name and nickname of the informant, his last known San Francisco address, and further stated that he had not seen the informant for several weeks and now believed him to be living in Los Angeles. On the defendant's request,

a physical description of the informant was also given. Defendant's attorney stated he would make a concerted effort to find the informant over the weekend and requested a continuance which was granted. On Monday morning, defendant's attorney stated to the court that he had been unable to locate the informant and did not request a further continuance.

The defendant further contends that the evidence is insufficient to support the verdicts. The testimony of the officers is sufficient to establish that a sale of heroin took place on November 7, 1956. (*People* v. *Alvidrez,* 158 Cal.App.2d 299 [322 P.2d 557]; *People* v. *Alonzo,* 158 Cal.App.2d 45 [322 P.2d 42].) In *People* v. *Barnett,* 118 Cal.App.2d 336 [257 P.2d 1041], relied upon by the defendant, the informant and the accused were not under observation by the officers for a considerable period of time. In the instant case, the officers observed the informant from the moment he left their car until he returned to it a few minutes later. The defendant directs his most strenuous attack on the sufficiency of the evidence to support the identification by the officers of him as the person who took part in the criminal transaction on November 7, 1956. Both officers testified that although they were not personally acquainted with the defendant he had been pointed out to them on several prior occasions, that they had seen him drive his car on prior occasions, and also testified as to their exact view of the defendant at the time. Whether or not the defendant was the person observed by the officers on November 7, 1956, was an issue properly left to the jury. The verdicts indicate that the jury resolved this question against the defendant. The evidence is sufficient to show the sale of heroin by the defendant.

Defendant next contends that the evidence relating to his prior crimes and prior use of heroin was inadmissible. The defendant denied the prior narcotics conviction in his plea. We are well aware of the rule that, generally, evidence of other crimes or of general propensity toward crime is not admissible; but where the defendant takes the stand in his own behalf, evidence of other crimes may be admitted to impeach his credibility as a witness. (Code Civ. Proc., § 2051; *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924].) There is therefore no merit in this contention.

 Defendant next contends that the prosecution's argument to the jury constituted prejudicial misconduct requiring a reversal, particularly, the following:

"It's a funny thing, ladies and gentlemen, about people

who use heroin, who are addicted to narcotics—and, of course, you know from the facts that this defendant is addicted to narcotics because on his arms, both on the date of his arrest on the vagrancy charge, which was a day or so after the sale, he had fresh marks, fresh puncture marks on his arms; on the day on which he was finally arrested and charged with this charge, he also had fresh puncture marks on his arm, which, of course, is a sign of the addict; but there's something about someone who uses heroin that they just can't seem to tell the truth. They can't distinguish truth from untruth, or the reasons why they should tell the truth, and I don't think it's any more illustrated than the fact that a part of the charge was that the defendant had a prior narcotic conviction and yet he denied it. He denied it when he came into court and pled not guilty, he denied that he had had a prior narcotic conviction, and yet the records are just as cold, and here they are, and they were introduced into court, that he had one. They just can't seem to know what the truth is or what the truth isn't.''

When the prosecutor's remarks were made, there was no objection to them, nor was any request made then or later that an admonition be given to the jury concerning them. ■ As stated in *People* v. *Johnson,* 153 Cal.App.2d 564 at pp. 570-571 [314 P.2d 751] : ''The law is well settled that the prosecutor is limited to a fair comment in his argument to the jury, and when this limitation is exceeded, in a close case, the comments may be prejudicial. (Citing cases.) ■ But when the prosecutor oversteps the line of fair comment, it is the duty of the defense counsel to request an admonition, and the failure to make such a request precludes appellate consideration of the point if the admonition would have precluded prejudice. (*People* v. *Hampton,* 47 Cal.2d 239 [302 P.2d 300].)

■ ''The prosecutor is permitted to draw reasonable inferences from the evidence and to comment on them. (*People* v. *Eggers,* 30 Cal.2d 676 [185 P.2d 1].) He is permitted wide latitude in discussing the merits of the case, and may state his views as to what the evidence shows as long as he stays within reasonable limits. (*People* v. *Sieber,* 201 Cal. 341 [257 P. 64].)'' ■ We find no prejudicial error in the remarks of the prosecutor quoted above.

■ Defendant's next contention is that the trial court committed prejudicial error by focusing the jury's attention on the issue of identity and improperly limiting the jury's discretion by the following instruction:

"Now as I listened to the arguments this morning, and as you listened to them, the District Attorney believes that he has presented a case which shows that this man is guilty of possessing and selling heroin on the 7th day of November, 1956. He is basing his case on the observations of two narcotic agents.

"Mr. Shinn believes that the agents are honest and he tells you that a sale, in his opinion, took place on the 7th day of November, 1956, but that his client didn't make that sale. Now it's a very simple case, if you believe that this man did make the sale and that the agents observed that, or whatever they did observe, observed him in the car, then you should find him guilty; if you believe the defendant's testimony that he did not make the sale, that he was not the person, that it was someone else, then naturally you should find him not guilty. The case is just that simple, and it seems to me that it's rather foolish in one sense that I should even give you instructions. However, the law says that I must give them to you, and there are a few points that I should call to your attention."

The record indicates that the issue of identity was the key theory of the defense; it was the sole issue argued by defendant's counsel to the jury. We think the instruction was a fair and impartial comment on the evidence, which when viewed with all of the instructions given, could not have been prejudicial to the defendant.

█ Defendant also asserts that the trial court committed further prejudicial error by failing to instruct the jury that knowledge of the narcotic character of the substance sold was an essential element of each of the offenses charged, citing *People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433] and *People* v. *Winston,* 46 Cal.2d 151 [293 P.2d 40]. There was no error here because the defendant admitted knowing what heroin was.

█ Defendant's final point is that he has been improperly convicted of two offenses, transportation and sale, when these were, in fact, cooperative aspects of one criminal transaction. It is well established that where the only possession and transportation of a narcotic are necessarily incident to its sale or furnishing, separate convictions cannot be had. (*People* v. *Roberts,* 40 Cal.2d 483 [254 P.2d 501] ; *People* v. *Branch,* 119 Cal.App.2d 490 [260 P.2d 27] ; *People* v. *Castiel,* 153 Cal. App.2d 653 [315 P.2d 79].)

Accordingly, the judgment must be reversed as to Count I, charging transportation, and affirmed as to Count II, charging

sale, and the order denying the motion for a new trial must be affirmed.

Dooling, J., and Draper, J., concurred.

A petition for a rehearing was denied May 29, 1958, and appellant's petition for a hearing by the Supreme Court was denied June 25, 1958.