[Crim. No. 7245. Second Dist., Div. Two. May 17, 1961.]

THE PEOPLE, Respondent, v. AMOS X. BRISTER, Appellant.

Amos X. Brister, in pro. per., for Appellant.

Stanley Mosk, Attorney General, Elizabeth Miller and Otto J. Hetzel, Deputy Attorneys General, for Respondent.

FOX, P. J.—Defendant was indicted for the crime of selling a narcotic, to wit, heroin, in violation of section 11501, Health and Safety Code. A jury returned a verdict of guilty. Defendant's motion for a new trial was denied. He has appealed from the judgment and the order.

On the evening of October 14, 1959, Officer Tusan, of the Los Angeles Police Department, was in the Normandie Club with a parolee known to him as "Ernie," who had been with the officer for some time as an undercover man, when defendant entered the club. These three persons engaged in a general conversation during the course of which Ernie asked the defendant if he knew where they could score (purchase) some papers (bindles) of heroin. Defendant replied that he did and that the papers were $10 apiece. Thereupon the officer, Ernie, and the defendant left the club and entered the officer's automobile. The defendant directed the officer to drive to the 2600 block on Dalton, where he parked. At that time the officer handed defendant $20. Defendant left the car and walked towards 27th Street and passed out of the view of the officer. Defendant returned in approximately five minutes and entered the car. He then asked Ernie to accompany him to the corner, which was only about three car-lengths away. The officer observed that defendant "leaned over." Ernie and he remained at the corner for several minutes before they returned to the automobile. After entering the car, Ernie handed Officer Tusan two red balloons, the contents of which

proved to be heroin. As Ernie and defendant entered the car, Ernie said that he did not appreciate the way in which the transaction was handled since the balloons were given first to him and then to Officer Tusan. Defendant stated that he did this because he did not know Tusan, and that if he (Tusan) returned at a later date he would deliver the balloons directly to him. The officer and Ernie let defendant out at the corner of Normandie and Adams. Officer Tusan then proceeded to the Police Administration Building where he marked and booked the two small red balloons as evidence in order that their contents might be chemically analyzed.

Defendant denied having any part in this transaction. He did state, however, that he occasionally visited the Normandie Club, and that he lived nearby.

■ Defendant challenges the sufficiency of the evidence to sustain his conviction upon several grounds. He points out that the bindles of heroin were handed to Officer Tusan by Ernie and not by him; that Ernie had not been searched previously. He thus seeks to raise the inference that Ernie could have had the narcotics on his person before the three met at the Normandie Club. There are, however, several circumstances that refute this inference and support the contrary inference drawn by the jury. First, Officer Tusan handed defendant $20 for the purchase of the bindles. Defendant left the car immediately after receiving the money, apparently for the purpose of procuring the heroin. He returned to the car and took Ernie with him to the street corner a short distance away. They remained there for a few minutes, during which time defendant was observed to "lean over." When both returned to the car, Officer Tusan heard Ernie say to the defendant that he did not appreciate the way the transaction was handled, and heard defendant say that he did not know Tusan, but if he later returned, defendant would give him the balloons directly. The trial court could reasonably infer from this chain of circumstances that defendant sold the narcotics to the officer using Ernie as the medium of delivery.

■ As stated in *People* v. *Taylor*, 52 Cal.2d 91, 94 [338 P.2d 337] : "It is not necessary that the buyer deal directly with the seller. The fact that the parties deal with each other through a third party is sufficient to sustain a conviction." To the same effect, see *People* v. *McNulty*, 171 Cal.App.2d 86, 89 [340 P.2d 340] ; *People* v. *Valencia*, 156 Cal.App.2d 337, 341 [319 P.2d 377].

■ Defendant also points out that the verdict is based

upon the uncorroborated testimony of Officer Tusan. He then takes the view that such evidence is not sufficient to sustain the verdict. He is mistaken, however, in his position. The uncorroborated testimony of the officer, if believed, as it was in view of the verdict, was sufficient. (*People* v. *Johnson*, 99 Cal.App.2d 559, 563 [222 P.2d 58].)

Defendant seeks to upset the verdict on the theory that the officer's testimony was untrue. It was, of course, for the jury to determine who was telling the truth. [■ An appellate court may not reevaluate either the credibility of the witnesses or the weight that should be given to their testimony. (*People* v. *Chesney*, 72 Cal.App. 570, 574 [237 P. 793].) The jury's decision on this factual issue is obviously controlling.

■ Defendant points to certain conflicts in the evidence of Officer Tusan, but such conflicts, even in the testimony of a particular witness, are for the resolution of the trier of fact. In *People* v. *Crownover*, 34 Cal.App.2d 7, 9 [92 P.2d 929], the court stated: ". . . it is well settled that the general rule governing reviewing courts in dealing with appeals involving a conflict of testimony applies with the same force to cases where the conflict arises from the testimony of one witness as it does to cases where the conflict arises from the testimony of witnesses on opposing sides. (Citations.)"

Defendant argues that it was the duty of the prosecution to produce Ernie in court so that defendant would have the opportunity to confront him. ■ However, "there is no compulsion on the prosecution to call any particular witness. . . ." (*People* v. *Tuthill*, 31 Cal.2d 92, 98 [187 P.2d 16].) Nor is there any duty on the part of the prosecution to produce all witnesses who were present at the time of the crime. (*People* v. *Robertson*, 67 Cal. 646, 651 [8 P. 600].) Ernie's surname was Hammond and his name was apparently known to defendant for, prior to trial, the defense had caused a subpoena to be issued requiring him to appear in court on the day of trial. The sheriff's office, however, had been unable to make service upon him.

Defendant relies upon *People* v. *Lawrence*, 149 Cal.App.2d 435 [308 P.2d 821], and *People* v. *Castiel*, 153 Cal.App.2d 653 [315 P.2d 79]. These cases are not here applicable because the People apparently provided the defendant with all the information they had available about Ernie, including his surname. Although Ernie was not brought into court during the trial, he was, nevertheless, produced at the time the motion for a new trial was set for argument. Defense counsel had

interviewed Ernie "several times" prior to that time. There appears to have been some difference of opinion between defendant and the deputy public defender who represented him as to whether Ernie should be called upon to testify. The matter was continued until the next day. At that time defendant apparently decided to abide by his counsel's decision not to have Ernie take the stand. Since the People were not required to produce Ernie at the trial, and since they appear to have provided such information about him as was available, and since, when he was available, both defendant and his counsel ultimately failed to request Ernie's testimony, defendant is not now in a position to complain that he was improperly refused the right to confront and cross-examine a potential witness.

Finally, defendant complains that he was not adequately represented. Examination of the record indicates that his case was competently handled. During the course of the proceedings on the motion for a new trial, when there was a difference of opinion between defendant and his counsel as to whether Ernie should be called as a witness, defendant indicated that he would like to have other counsel appointed to represent him. In denying this request the trial judge remarked: "Miss McDonald has done a wonderful job." This is further proof that defendant had adequate legal counsel.

The judgment and the order are affirmed.

Ashburn, J., concurred.