34 Cal.Rptr. 840]

[Crim. No. 8665.    Second Dist., Div. Four.    Nov. 1, 1963.]

**THE   PEOPLE, Plaintiff and Respondent, v.  JOHN GEETER, Defendant and Appellant.**

John Geeter, in pro. per., and H. Clay Jacke for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Lawrence R. Tapper, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In an information filed by the District Attorney of Los Angeles County, defendant was charged with two counts of robbery in violation of Penal Code section 211. The information also charged a prior felony conviction. Defendant pleaded not guilty and denied the prior conviction. Subsequently, out of the presence of the jury, defendant admitted the prior conviction. The jury returned a verdict of guilty to each count and fixed the degree of the crime to be robbery in the first degree. Defendant's motion for a new trial was denied. Probation was denied and defendant was sentenced on each count to the state prison for the term prescribed by law, the sentences to run concurrently. Defendant appeals from the judgment of conviction.

The evidence reveals that Anne Hamilton (one of the robbery victims), operated a café in the City of Los Angeles. On February 3, 1962, she was seated with some of her customers at one of the tables in the café discussing plans for a party to be given that night at her apartment. She wrote down the address of the apartment for two of these customers. Throughout this conversation defendant and another person were sitting at another table, approximately 4 or 5 feet from her. She noticed defendant because he had an unusual hair line that came to a point, and also because he had gold front teeth.

At approximately 2 a.m. on the morning of February 4th, while the party was still in progress at Mrs. Hamilton's apartment, there was a knock at the front door. As Mr. Hamilton opened the door, six men, armed with shotguns and pistols, forced their way past him into the apartment and said, "This is a holdup." They wore handkerchiefs tied around their faces. However, during the course of the robbery which followed, the handkerchiefs fell, exposing their faces. Mrs. Hamilton recognized defendant as one of the robbers. He was standing about 4 feet away from her when his mask slipped from his face. She noticed his gold front teeth.

The robbers moved in and out of the various rooms of the

apartment. Many of the approximately 25 guests attending the party were beaten and kicked and their money and purses were taken. One of the guests, Muriel Wallace, noticed defendant standing with a pistol in his hand a few feet from her. His mask had fallen from his face. $28 was taken from her.

Mrs. Hamilton gave one of the robbers her purse containing approximately $180 when he pointed a gun at her and said, ''Give me your money.'' She later collapsed to the floor when she saw one of her guests beaten on the head. One of the robbers kicked her as she lay on the floor, warning her, ''If you faint again, it will be permanent.'' After about five minutes defendant left the apartment, shouting ''Come on, men, the ones with the money they got away.'' The other robbers then also left. Mrs. Hamilton immediately called the police and they arrived about 30 minutes later. Four of the robbers were subsequently apprehended and charged with the crime. At the preliminary hearing for these four, both Mrs. Hamilton and Mrs. Wallace independently recognized defendant as a spectator in the courtroom and he was arrested as he left the courtroom.

Defendant testified in his own behalf. He denied he participated in the robbery and stated he was at the ''Intime Social Club,'' a gambling place at Adams and Budlong in the City of Los Angeles. He arrived there with his ''partner'' James Bristow between 11:30 and 12 midnight on February 3 and gambled until approximately 8:30 a.m. on February 4th. He denied he had ever been to the victim's apartment, or that he had ever been a customer at Anne Hamilton's café. He admitted he was arrested while attending the preliminary hearing of four men charged with the robbery of Anne Hamilton's apartment and that he knew one of the robbers. He acknowledged some of his teeth were gold on February 4, 1962, even though they were not gold at the time of his trial. He also admitted a prior felony conviction in the State of Alabama in 1956 (the prior alleged in the information.)

James Bristow testified in behalf of defendant. He was with defendant on the evening of February 3 and the morning of the 4th. They went to the ''Intime Club'' and remained there until approximately 8 a.m. on the morning of February 4. They did not gamble at the club, but participated in a ''twist'' contest.

Robert Wright, an officer of the Los Angeles Police De-

partment, testified in behalf of defendant. He investigated the robbery and was present at three "line-ups" in which defendant appeared. Anne Hamilton was also present. After each of the first two line-ups, defendant was released.

It was stipulated by counsel that if Officer Bobbitt of the Los Angeles Police Department were called on behalf of defendant, he would testify that during the early hours of February 4, he answered a call which took him to the premises where the robbery occurred; that he interviewed Anne Hamilton, and that as a result thereof, he filed a report in which it is indicated that she told him there were five participants in the robbery, four of whom entered the premises and one who remained outside; that nowhere in Officer Bobbitt's report is any robber described as having gold teeth or an unusual hairline.

Officer Wright was called on behalf of the People on rebuttal. He arrested defendant on April 25, 1962; when questioned, defendant stated freely and voluntarily that, since all of the men being tried for robbery were friends of his, he went to see how they would fare; when asked where he had been on the evening of February 3 and the morning of the 4th defendant replied that he did not know.

Defendant contends the evidence was legally insufficient to prove he committed the robbery. Defendant argues that because Mrs. Hamilton and Mrs. Wallace could not positively identify him at the first two "line-ups" in which he was placed, their later positive identification could not constitute substantial evidence to support his conviction. This contention is without merit. The evidence was substantial; where there is substantial evidence supporting the jury's determination, it must be upheld. (*People* v. *Caritativo*, 46 Cal.2d 68, 72 [292 P.2d 513].) ▮ "To entitle a reviewing court to set aside a jury's finding of guilt, the evidence of identity must be so weak as to constitute practically no evidence at all. [Citations.]" *People* v. *Braun*, 14 Cal.2d 1, 5 [92 P.2d 402].)

▮ "An appellate court may not reevaluate either the credibility of the witnesses or the weight that should be given their testimony. [Citation.] The jury's decision on this factual issue is obviously controlling." (*People* v. *Brister*, 192 Cal.App.2d 234, 237 [13 Cal.Rptr. 375].)

▮ The victims were meticulously cross-examined on the subject of their identification of the defendant, and, while there may have been some minor discrepancies, it is apparent that the jury believed the victims. "The strength or

weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, and the uncertainties of witnesses in giving their testimony were matters solely for the observation and consideration of the jurors in the first instance, and for the consideration of the trial court on motion for a new trial. It has approved the finding of the jury, and on appeal this court may not disturb such finding and the action of the trial court unless we can say, as a matter of law, that there was no evidence to support the conviction. [Citation.]'' (*People* v. *Farrington*, 213 Cal. 459, 463-464 [2 P.2d 814].) From a review of the record before us, we cannot say that this is such a case.

■ Defendant contends the trial court erred in not trying him jointly with his accomplices. It is argued that this amounted to a denial of due process. It is also asserted that the failure of the prosecutor to consolidate the cases for trial denied him a speedy trial guaranteed under article I, section 13, of the California Constitution and section 686 of the Penal Code. We find these contentions to be wholly without merit. Defendant had not been apprehended or arrested at the time four of the other men involved in the same robberies had been apprehended and an information (No. 256450) had been filed on March 26, 1962, charging them with the same robberies. Under these circumstances the prosecutor could not jointly charge defendant in the same information with the other defendants for he was not in custody and his whereabouts were unknown.

The other contentions of defendant have no merit and need not be stated in detail. A review of the record reveals that no prejudicial error occurred and that the evidence was amply sufficient to support the verdicts on both counts.

The judgment is affirmed.

Burke, P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 30, 1963.