[Crim. No. 10968. Second Dist., Div. Three. Aug. 31, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE E. MONTANO, Defendant and Appellant.

 

William Herbert Hall, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Andrea Sheridan, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, J.—The sole question on this appeal from a conviction for possession of marijuana (Health & Saf. Code, § 11530) is whether the trial judge should have ordered the disclosure of the names of two confidential informants. The search warrant which led to the discovery of the contraband in defendant's home and garage was issued on the basis of the information supplied by the two individuals to a deputy sheriff.

After the information against defendant was filed in the superior court, he made a pretrial motion in that court for the discovery of the names of the two informants. He supported his motion with an affidavit to the effect that it was apparent to him from reading the affidavit supporting the search warrant that the two informants were eyewitnesses to the alleged offense and that he did not know their true names or addresses. The motion was denied and defendant then petitioned this court for a writ of prohibition to prevent his then scheduled trial from being held without prior disclosure of the names of the informants. The district attorney filed points and authorities in opposition to the petition which was denied without the granting of an alternative writ.[1]

It should be noted at the outset that at no time—as far as we are aware—has defendant claimed that the search warrant

[1]Although the record in connection with the petition for a writ of prohibition is not formally a part of the record on this appeal, it is proper for us to take judicial notice of its contents. (*Taliaferro* v. *Taliaferro,* 178 Cal.App.2d 140 at p. 141-144 [2 Cal.Rptr. 716]; *Collins* v. *City & County of San Francisco,* 112 Cal.App.2d 719, 725 [247 P.2d 362]; *Calhoun* v. *Calhoun,* 81 Cal.App.2d 297, 302 [183 P.2d 922].)

was not issued on probable cause. (Cf. *People* v. *Butler,* 64 Cal.2d 842 [52 Cal.Rptr. 4, 415 P.2d 819].) The problem of disclosure of an informant's identity as an incident to a fair hearing on that issue thus has nothing to do with this case. (Cf. *Priestly* v. *Superior Court,* 50 Cal.2d 812 [330 P.2d 39].)

The affidavit was signed by Deputy Sheriff Guenther and contained the following: "Your affiant, Charles Guenther, has been informed by a reliable confidential informant that the deft. George Edward Montano is presently in possession of one kilo of marijuana. The reliability of said informant has been established by the following: On three prior occasions, August 18, 19 and September 8, informant has given to Charles Guenther a total of 20 handrolled marijuana cigarettes debris given to informant by suspect Montano. Informant's information is further corroborated by a second reliable, confidential informant, an undercover deputy sheriff, *who states that he was present in the house when the suspect Montano arrived with a package that reliable informant #2 states contained one kilo of marijuana.* Reliable informant #1 had informed your affiant of the arrival of Montano with this contraband. Montano is known by your affiant to be an associate of narcotic violators one of whom is David Garcia who is presently awaiting trial for marijuana possession.

"Approximately 3:00 P.M. September 9, 1964, informant #1 contacted affiant's office at which time informant stated *informant was presently at the home of the suspect Montano; that informant knew and had seen one kilo of marijuana in a waste basket in the bathroom of the location.* This date, September 10, 1964, informant contacted affiant office and *related that half of that kilo was presently secreted in the garage at the rear of location.*" (Italics ours.)

Herewith a summary of the evidence pertinent to the appeal: Deputy Sheriff Guenther, armed with the search warrant, was admitted by Montano at his single family home with detached garage at about 6:15 p.m. on September 10, 1964. In the living room he found an ashtray with two marijuana cigarette butts. In the garage, inside of a large yellow bucket, he found two paper bags containing somewhat less than two and a half pounds of marijuana and another marijuana butt. Montano was arrested. After a proper warning he said: "Let's not make a big thing out of this. I'm the only one here, so let's go."

On cross-examination of Guenther, counsel for defendant

made various attempts to have the officer instructed to disclose the identities of the two informants. Most of his questions were blocked by successful objections. The questions to which the court would not allow answers encompassed the following: whether ''informant #1'' was then in custody; whether he had ever been paid for giving information; how long Guenther had known him; whether he knew where he was; whether he was able to produce him in court that day; whether ''informant #2'' was still a deputy sheriff; whether the informant told him he had personally seen the marijuana or had been in the garage of defendant's home and, of course, what were the names of the two informants. Defense counsel did get into the record the following matters: that Guenther knew the name of ''informant #1''; that the information used to obtain the search warrant had been gathered over a period of time; that the affidavit was signed sometime before noon on September 10; that Guenther got the last information on which he based his affidavit within a day or two before the issuance of the search warrant; that—apparently correcting himself—he did have a conversation with one of the informants on September 10 and that he had reason to believe the informant when he told him that he had seen the marijuana in the garage.

Defendant testified in his own defense. He denied knowing anything about the marijuana until the officers discovered it. He claimed that when Officer Guenther picked up the ash tray in the living room there were only ordinary cigarette butts in it, that the officer went into the bathroom with it, brought it back, that it was then ''minus the cigarette butts'' but did have a marijuana butt in it. As far as the two bags of marijuana in the pail in the garage were concerned, defendant had never seen them before. He claimed to have used his garage very rarely.

Defendant also claimed that after Guenther announced that he had found the marijuana in the ash tray, he put him under arrest and took him to the garage, where the balance was discovered. Defendant immediately disclaimed any knowledge of it. Certain statements by the arresting officers caused him to believe that they would try to arrest members of his family, so he said: ''. . . Let's not make a big thing out of it, let's get out of here.''

He said that he had read Guenther's affidavit very carefully and after reflection and thought had formed an idea that the person referred to as ''informant #1'' was somebody whom he knew only by his first name—Alex—and whose address he did not know. He had known Alex for a couple of years. On

August 18, 1964, Alex came to his house with some marijuana cigarettes which he wanted him to buy. He needed money. Defendant loaned him $1.00 and told him that he did not want the marijuana. He came back the next day and again unsuccessfully "propositioned" defendant. He came again on September 9 while defendant was watering the lawn. He asked to use the bathroom, went into the house, came out a few minutes later and left. In the afternoon of the day of the arrest he again came to the house and asked to use the telephone. Defendant was again mowing the lawn. He went into the house after Alex had been in there for quite a while and smelled that Alex had smoked a marijuana cigarette. He was sitting by the telephone. Defendant got mad. Alex admitted having smoked a marijuana cigarette. As far as defendant knew Alex was never in the garage.

Defendant also testified that on the assumption that Alex was "informant #1" he had figured out that someone by the name of Richard, who had been introduced to him by Alex as his cousin, must be "informant #2."[2] A few days before the search defendant had returned to the house after shopping for a picnic. Alex was there, but he was not sure about Richard. Defendant was carrying a package of ice cubes and other purchases. Alex made a remark that the package looked like marijuana and defendant said to him: "Well, that's your game."

Cross-examination of defendant did not particularly shake his story, such as it was. It was disclosed that defendant claimed to have met Alex when the two were employed in the same neighborhood and defendant observed him at lunch time when he used to "peddle his pills" to the "guys."

Defendant's wife corroborated the existence of Alex and his use of the telephone on the day of her husband's arrest. Defendant's sister also testified that Alex was in the house that day.

Since defendant relies most exclusively on *People v. Perez*, 62 Cal.2d 769 [44 Cal.Rptr. 326, 401 P.2d 349], it is necessary to state the facts of that case and to consider whether the differences, if any, justify a different result.[3]

Perez and one Morales were arrested at a hotel room in Woodland, Yolo County, at 11:30 p.m. on October 13. Officers

---

[2]Defendant's reasoning is hard to follow, but in view of our conclusions, the point is immaterial.

[3]The trial in the case at bar took place before the Supreme Court's decision in *People v. Perez* was filed.

who had entered the room pursuant to a search warrant found a canvas bag and a shopping bag containing marijuana as well as a cigarette butt in an ash tray.

The affidavit supporting the search warrant stated that an informer had observed marijuana in defendants' hotel room on October 13. At the trial defendants testified that on October 12, they met a stranger who drove them to the hotel, put a package in Perez' canvas bag and placed it, together with his own shopping bag, on the floor of the defendants' hotel room for which he paid. The stranger returned at 7:30 the next evening and smoked a marijuana cigarette in the room. No one else entered the room that day.

The Supreme Court held that the disclosure of the identity of the informant should have been compelled. If the informant was a "material witness" on the issue of guilt, the prosecution had the choice of disclosing or dismissing. If the informant was the person who left the marijuana in defendants' room, he was a participant in the crime. His testimony might have disclosed an entrapment and he might have confirmed defendants' testimony that they did not know that the bags in their possession contained marijuana. Adverting to a claim by the People that there was no evidence in the record that the informant and the stranger were the same person, the court points to the fact that the affidavit supporting the warrant claimed that the informant had observed the marijuana in the hotel room on October 13 and that according to the defense testimony no one else except the stranger and the defendants were in the room that day.

We do not believe, however, that this showing of the possibility that the informant and the stranger were one and the same is essential to the result in *Perez*. Even if Perez had testified to a steady procession of visitors in the hotel room on the day in question, the testimony of the informant, who according to the affidavit must have been one of them, might still have disclosed entrapment and he might, in other respects, have been a material witness on the issue of guilt.

*People* v. *Perez, supra,* is the most recent application by our Supreme Court of the principle first announced by the Supreme Court of the United States in *Roviaro* v. *United States,* 353 U.S. 53 [77 S.Ct. 623, 1 L.Ed.2d 639], but anticipated in this state by *People* v. *Lawrence,* 149 Cal.App.2d 435, 451 [308 P.2d 821].[4] (See *People* v. *Castiel,* 153 Cal.App.2d 653, 658 [315 P.2d 79].)

---

[4]We need not express an opinion whether the rule of *Roviaro* is one of constitutional dimensions or merely a rule of evidence and procedure

If Montano's story about Alex is believed, it is impossible to distinguish the present case from *Perez*. In each case the defendant's story raised the possibility that the contraband was planted by the informant. There are, of course, certain factual distinctions but they appear minor: 1. If the defense testimony in *Perez* was true, it proved pretty conclusively that it must have been the stranger who was not only the informant but also the person who left the marijuana in the hotel room. Here, since other people were in and about defendant's home, the conclusion that Alex left the marijuana around the house and garage is not as compelling. This seems a matter of degree only. 2. Perez had no idea who the stranger was, while defendant here knew a first name that he used and he had had some earlier contacts with him. The Attorney General focuses attention mostly on that fact and points to the lack of any showing that defendant had made an attempt to locate Alex. There was no showing in *Perez* that an attempt had been made to find the stranger other than by seeking disclosure of the identity of the informant. Can we possibly base a legal distinction on an assumption that it is easier to find a witness in Los Angeles County (Pop. 6,038,771), if one knows his first name and nothing else, than to locate a "stranger" in the County of Yolo (Pop. 65,727)? (Gov. Code, § 28020.)

In truth, however, trying to equate or distinguish the facts here with the precise facts of *People* v. *Perez* is unnecessary. We may even assume—as was suggested by the district attorney in his argument to the trial court—that defendant made up his story about Alex after a careful review of the facts in *Perez*.[5] We may assume further that the trial court positively disbelieved defendant's story as told.[6] ▮ The fact remains, however, that "informant #1" at some undisclosed

applicable only to federal prosecutions. (Cf. *Palermo* v. *United States*, 360 U.S. 343, 353 [79 S.Ct. 1217, 3 L.Ed.2d 1287] with *Jencks* v. *United States*, 353 U.S. 657 [77 S.Ct. 1007, 1 L.Ed.2d 1103].) The Court of Appeals for the second circuit in *United States* v. *Fay*, 344 F.2d 625, 631, footnote 4, considers the question an open one.

[5]The District Court of Appeal filed its opinion in *Perez* on January 13, 1965. The trial in the case at bar started on February 10, 1965. The Supreme Court granted a hearing on March 10, 1965. The opinion of the District Court of Appeal sets forth substantially the same facts as does the Supreme Court's.

[6]Although the trial court did not believe Montano's denial of guilt, the record suggests that for the purpose of its ruling on the defendant's motion to strike Guenther's testimony and to suppress the evidence, the court accepted at least part of his story about Alex. The prosecutor argued that the defendant "seems to know who the informant is." The court replied: "He doesn't know just who he is. He thinks, I gather from his testimony, he thinks it is Alex, whoever Alex is."

time told Deputy Guenther that Montano had arrived at his house with one kilo of marijuana; that on September 9 he telephoned Guenther from Montano's home and told him that he had seen the marijuana in a wastebasket in the bathroom; that on September 10 he told Guenther's "office" by telephone from Montano's house that half of the kilo was in the garage and that "informant #2" had claimed to be present in the house when Montano arrived with the contraband. Although these matters, if true, do not make the informants participants in the very act for which defendant was convicted, namely his possession at the time immediately preceding his arrest, the rule of *Roviaro, Perez* and *McShann* is not so narrow. In *Roviaro* the court expresses the test as follows: "Where the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." (*Roviaro* v. *United States,* 353 U.S. 53, 60-61 [77 S.Ct. 623, 1 L.Ed.2d 639].)

Enlarging on this principle, our own Supreme Court said in *People* v. *McShann,* 50 Cal.2d 802, 808 [330 P.2d 33]: "Disclosure is not limited to the informer who participates in the crime alleged. The information elicited from an informer may be 'relevant and helpful to the defense of the accused or essential to a fair determination of a cause' even though the informer was not a participant. For example, the testimony of an eyewitness-nonparticipant informer that would vindicate the innocence of the accused or lessen the risk of false testimony would obviously be relevant and helpful to the defense of the accused and essential to a fair determination of the cause.

"Disclosure is frequently a problem in such cases as the present one involving violations of the narcotics laws, when the so-called informer is also a material witness on the issue of guilt. A mere informer has a limited role. 'When such a person is truly an informant he simply points the finger of suspicion toward a person who has violated the law. He puts the wheels in motion which cause the defendant to be suspected and perhaps arrested, but he plays no part in the criminal act with which the defendant is later charged.' (*People* v. *Lawrence, supra,* 149 Cal.App.2d at p. 450 [308 P.2d 821].) His identity is ordinarily not necessary to the defendant's case, and the privilege against disclosure properly applies. When it appears from the evidence, however, that the informer is also a material witness on the issue of guilt, his identity is relevant

and may be helpful to the defendant. Nondisclosure would deprive him of a fair trial. Thus, when it appears from the evidence that the informer is a material witness on the issue of guilt and the accused seeks disclosure on cross-examination, the People must either disclose his identity or incur a dismissal.'"[7]

In two cases following *McShann* our Supreme Court applied the rule to situations where the informant was not even a witness to some of the crimes involved. *People* v. *Durazo*, 52 Cal.2d 354 [340 P.2d 594, 76 A.L.R.2d 257] and *People* v. *Williams*, 51 Cal.2d 355 [333 P.2d 19], are virtually identical. In each case the defendant was charged with several narcotics violations. In *Williams* a policeman testified that an informant was present at the sale involved in count I, but was not present at the one charged in count II. Defendant was convicted on both counts. The People's refusal to identify the informant was upheld by the trial court. Defendant claimed that the witness was mistaken as to his identity. In reversing, the Supreme Court held that the informant was clearly a material witness on the issue of guilt with respect to count I. He "might have testified that defendant was not the seller of the narcotic." Disclosure was also required as to count II, because contradiction of the officer's identification of defendant with respect to count I "would have been highly material evidence to show that the officer was also mistaken in connecting defendant with the second transaction." Thus, under the circumstances of the case the informant's testimony might have been "relevant and helpful" as to a count which no one claimed he knew anything about.

*Durazo* went even further—at least in the opinion of Justice Shenk, dissenting. This was a three-count indictment and the prosecution evidence placed the informant on the scene with respect to the first count only. Defendant was acquitted on count I and convicted on counts II and III.[8] Again it was held that disclosure should have been compelled.

In this case there can be no question that both informants,

---

[7]Any implication from the facts and the discussion in *McShann* that disclosure is only compellable where the prosecution introduces evidence of his existence as part of its case is dispelled by *People* v. *Perez*, where no such thing took place.

[8]The prosecution's case was submitted, in part, on the transcript of the grand jury proceedings. The police officer also testified at the trial, as did defendant. It seems clear that the acquittal on count I was not due to any disbelief of the prosecution testimony, but was the indirect result of the prosecution's motion to dismiss that count because of the informant's participation, a motion which was never ruled on.

according to Deputy Guenther, claimed to know a great deal about the crime of which defendant was convicted. The information they gave to Guenther may have been true or wholly or partly false, but what attorney, entrusted with Montano's defense, would not want to know very badly what they knew about the crime? There is, of course, nothing to suggest that the two informants would have been helpful to the defense, except defendant's own testimony which amounted to a claim that somebody had "framed" him. This does not affect the application of the rule. The words of Justice Dooling in *People* v. *Castiel,* 153 Cal.App.2d 653 [315 P.2d 79], quoted in the footnote[9] expressly refute any rule that the defendant must show that he has reason—apart from his own denial of guilt—to expect favorable testimony from the informant and the facts in *McShann, Williams, Durazo* and *Perez* by necessary implication indicate that there is no such requirement. For example, in *Perez,* although the Supreme Court expressly holds that there was no evidence of entrapment (*ibid.,* p. 775), it nevertheless says that the refusal to require disclosure of the informant was error, because "his testimony might have disclosed an entrapment."[10]

The People rely before us, as they did in the trial court, exclusively on certain federal decisions, such as *Hurst* v. *United States,* 344 F.2d 327; *Jones* v. *United States,* 326 F.2d 124 and *Miller* v. *United States,* 273 F.2d 279. We need not attempt to distinguish the facts in these cases. As we read them and many other federal decisions in this field, it is fairly clear that not all panels of all courts of appeal in all circuits have embraced *Roviaro* v. *United States* with the same fervor as our state courts. Nothing in the Constitution prevents us

[9] "No one knows what the undisclosed informer, if produced, might testify. He might contradict or persuasively explain away the prosecution's evidence. It is the deprival of the defendants of the opportunity of producing evidence which *might* result in their exoneration which constitutes the error in this case, and we cannot assume because the prosecution evidence may seem strong that the undisclosed evidence might not prove sufficient to overcome it in the minds of the jurors." (*People* v. *Castiel,* 153 Cal.App.2d 653, 659 [315 P.2d 79].)

[10] True, the defense testimony in *Perez,* if believed, showed a strong possibility that the informant, if his recollection of events was the same as that of the defendants, would provide them with an even stronger defense. This was so because the affidavit on the basis of which the search warrant was issued, if true, showed that the informant was the "stranger" who, without defendants' knowledge, "planted" the narcotic in their hotel room and could possibly negative guilt altogether, without reliance on entrapment; but this factor was, if our analysis is correct, not necessary to the decision.

from granting a defendant an even fairer trial than that document compels. (Cf. *Johnson* v. *New Jersey,* 384 U.S. 719, 733 [86 S.Ct. 1772, 16 L.Ed.2d 882].) The federal cases may be a reflection of the traditional antagonism of the federal judiciary against criminal discovery. (See Traynor, *Ground Lost and Found in Criminal Discovery,* 39 N.Y.U.L.Rev. 228 et seq. for a comparison between the federal attitude toward criminal discovery and the California decisions starting with *People* v. *Riser,* 47 Cal.2d 566 [305 P.2d 1].) When all is said and done, whatever may be the constitutional underpinnings of *Roviaro* and *Perez,* in essence they stand for a principle permitting a certain type of discovery to a defendant in a criminal case. This conclusion is compelled by the facts of cases such as *Perez* where, since the prosecution proved its case without mention of the informer, disclosure of his identity cannot be justified as incident to cross-examination of the prosecution's witnesses.

The judgment is reversed.

Shinn, P. J., and Ford, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 26, 1966.